IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BASIN TRANSLOAD, LLC,<br><br><br>Debtor. | Chapter 11<br>Case No. 20-11462 (_____) |

**DISCLOSURE STATEMENT FOR THE
CHAPTER 11 PLAN OF REORGANIZATION
FOR BASIN TRANSLOAD, LLC**

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE
CHAPTER 11 PLAN OF REORGANIZATION FOR BASIN TRANSLOAD, LLC.  THIS
PROPOSED DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL
BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

Dated: June 1, 2020
      Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*

_____
William P. Bowden (No. 2553)
Gregory A. Taylor (No. 4008)
Stacy L. Newman (No. 5044)
Katharina Earle (No. 6348)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
Phone: (302) 654-1888
Facsimile: (302) 654-2067

*Proposed Counsel to Debtor and
Debtor-in Possession*

# TABLE OF CONTENTS

Page

DISCLAIMER ...................................................................................................................1

INTRODUCTION ..............................................................................................................1

ARTICLE I.  INFORMATION ABOUT THE REORGANIZATION PROCESS .........................2

    A.  Purpose of the Disclosure Statement ........................................................2

    B.  The Confirmation Hearing ........................................................................2

    C.  Acceptance Requirement to Confirm Plan .................................................2

ARTICLE II.  HISTORY OF THE DEBTOR'S BUSINESS .........................................................3

    A.  The Debtor and its Members......................................................................3

    B.  Nature of Business ....................................................................................3

    C.  Debtor's Operational Locations .................................................................4

        1.  Beulah Facility ...............................................................................4

        2.  Stampede Facility ...........................................................................4

    D.  Events Leading to Chapter 11 Filing .........................................................5

ARTICLE III.  THE DEBTOR'S ASSETS AND LIABILITIES ....................................................6

    A.  The Debtor's Assets and Liabilities ..........................................................6

    B.  Debtor's Contracts and Leases ..................................................................6

        1.  Beulah Facility ...............................................................................7

        2.  Stampede Facility ...........................................................................8

ARTICLE IV.  OPERATIONS AND CHAPTER 11 ISSUES ...................................................9

   A.  Guaranty Reimbursement Contribution Dispute and Litigation Among
      The Majority and Minority Members of the Debtor....................................................9

   B.   Required Contributions Under The Operating Agreement .....................................10

   C.  Indemnification Claims..........................................................................................11

   D.  Retention of Chief Restructuring Officer (CRO)...................................................12

   E.  Retention of Professionals .....................................................................................12

ARTICLE V.  SUMMARY OF THE CHAPTER 11 PLAN...........................................................12

   A.  Overview .................................................................................................................12

   B.  Unclassified Claims................................................................................................13

      1.    Summary ......................................................................................................13

      2.    Details for Unclassified Claims ..................................................................13

         (a) Priority Tax Claims............................................................................13

         (b) General Administrative Expense Claims...................................................14

         (c) Professional Fee Claims ....................................................................14

         (d) Quarterly Fees...................................................................................14

   C.   Classified Claims and Interest ...............................................................................15

      1.   Summary .......................................................................................................15

      2.   Classified Claims and Interests Details ...........................................................15

   D.   Implementation of the Plan ....................................................................................17

      1. Sources of Payments; Working Capital .............................................................17

      2. New Membership Interest .................................................................................17

      3. Valuation of the Debtor.....................................................................................17

      4. Corporate Governance.......................................................................................18

E. Treatment of Executory Contracts and Unexpired Leases........................................18

F. Provisions Governing Distributions........................................................................19

G. Discharge, Releases, Exculpation, and Injunctions.................................................19

    1. Discharge...........................................................................................................19

    2. Releases.............................................................................................................20

    3. Exculpation.......................................................................................................21

    4. Injunctions........................................................................................................21

H. Conditions to the Effective Date and Consummation of the Plan...........................22

I. Retention of Jurisdiction..........................................................................................23

ARTICLE VI.  CONFIRMATION PROCEDURES.....................................................................23

A. Requirements for Confirmation of the Plan............................................................23

B. Best Interests of Creditors / Liquidation Analysis..................................................23

C. Feasibility................................................................................................................24

D. Confirmation without Acceptance by Impaired Class.............................................24

    1.    No Unfair Discrimination.................................................................................24

    2.    Fair and Equitable............................................................................................24

E. Alternatives to Confirmation and Consummation of the Plan................................25

ARTICLE VII.  RISK FACTORS...............................................................................................25

A. General....................................................................................................................25

B. The Conditions Precedent to the Effective Date of the Plan May Not Occur..........26

C. Non-Confirmation or Delay of Confirmation of the Plan.......................................26

D. Non-Consensual Confirmation...............................................................................26

E. Other Parties in Interest May Be Permitted to Propose Alternative
Plans that Are Less Favorable to Certain Stakeholders...........................................26

F. Conversion to Chapter 7..........................................................................................26

G.  Failure to Obtain Approval of Releases, Injunctions, and Exculpation ...................27

ARTICLE VIII.  TAX CONSEQUENCES OF THE PLAN .........................................................27

ARTICLE IX.  CONCLUSION AND RECOMMENDATION ....................................................27

## DISCLAIMER

The Disclosure Statement contains, among other things, a summary of the Plan and the treatment of the claims against and interest in the Debtor under the Plan, a description of certain provisions of the Bankruptcy Code and other applicable statutory provisions, and certain events that preceded the filing of the Debtor's Chapter 11 Case and certain events the Debtor expects to occur during the Chapter 11 Case.  These summaries are qualified in their entirety by the terms of the Plan, and the applicable statutory provisions.  In the event of any inconsistency or discrepancy between a description in the Disclosure Statement and the terms and provisions of the Plan, or any document incorporated in this Disclosure Statement or the Plan by reference, such other documents will govern for all purposes.  Factual information contained in the Disclosure Statement has been provided by the Debtor's management except where otherwise specifically noted.

The financial information contained in the Disclosure Statement is made only as of the date of the Disclosure Statement, and there can be no assurance that the financial information contained herein will be correct at any time after this date.   Except as otherwise expressly indicated, the information contained herein has not been subject to audit or independent review.  The description of the Plan in the Disclosure Statement is in summary form and is qualified in its entirety by reference to the actual terms and conditions of the Plan.

The rules of interpretation set forth in Article I of the Plan shall govern the interpretation of the Disclosure Statement.

## INTRODUCTION

Pursuant to section 1125 of the Bankruptcy Code, Basin Transload, LLC, a Delaware limited liability company (the "**Debtor**") provides this disclosure statement (the "**Disclosure Statement**")[1] to all of the Debtor's known creditors and parties in interest.  The purpose of the Disclosure Statement is to provide the information necessary to enable the holders of Claims and Interests entitled to vote to accept or reject the Plan to vote on the Plan.  The Plan, a copy of which is attached to the Disclosure Statement as **Exhibit A**, is being filed with the Bankruptcy Court simultaneously with the filing of the Disclosure Statement.

The Debtor has approved the Plan and believes the Plan is in the best interests of the Debtor's estate, its creditors and other parties in interest.  The primary feature of the Plan is the acquisition of 100 percent of the New Membership Interest in the Reorganized Debtor by Global Companies LLC ("**Global Companies**") (Global Companies or its designee, as the owner of the New Membership Interest, the "**New Member**")  in exchange for the Acquisition Price and as set forth in section 5.3 of the Plan.  Under section 5.2 of the Plan, the Reorganized Debtor shall fund distributions to holders of  Allowed Claims, and shall have adequate working capital, with (i) Cash on hand, (ii) the Acquisition Price,  and (iii) by working capital, as appropriate, to be provided by the New Member.

As described below and in the Plan, Holders of Class 1 (General Unsecured Claims) and Class 2 (Guaranty and Subrogation Claim) are Unimpaired, presumed to have accepted the Plan,

---

[1] Capitalized terms used herein and not otherwise defined in the Disclosure Statement shall have the same meanings as set forth in the Plan.

and are not entitled to vote to accept or reject the Plan.  Class 3 (Interests) is Impaired, presumed not to have accepted the Plan, is conclusively presumed to have rejected the Plan, and is not entitled to   vote on the Plan.

# ARTICLE I.
# INFORMATION ABOUT THE REORGANIZATION PROCESS

### A.      Purpose of the Disclosure Statement

The Disclosure Statement includes background information about the Debtor, including the Debtor's assets and liabilities, its operations and financial information.  It also identifies the Classes into which the holders of Claims and Interests are placed under the Plan, and describes the proposed treatment of each of those Classes if the Plan is confirmed.  In addition, the Disclosure Statement contains information concerning the impact upon creditors in the event the Plan is confirmed, or in the event the Plan is not confirmed, or the proposed Plan does not become effective.

Upon approval by the Bankruptcy Court and in accordance with the provisions of the Bankruptcy Code, the Disclosure Statement and its exhibits will have been found to contain "adequate information", which is information of a kind and in sufficient detail that would enable a reasonable, hypothetical investor typical of a holder of impaired claims or interests to make an informed judgment about the Plan.  Approval of the Disclosure Statement by the Bankruptcy Court, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

### B.      The Confirmation Hearing

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on [_____], 2020 at [____]:00 a.m., or as soon thereafter as the parties can be heard (the "**Confirmation Hearing**").  The Confirmation Hearing will be held before the Honorable [_____], United States Bankruptcy Judge, United States Bankruptcy Court, District of Delaware, United States Courthouse, *824 N. Market Street, Wilmington, DE 19801, Courtroom [_____]*.  At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code.

### C.      Acceptance Requirement to Confirm Plan

At the Confirmation Hearing, the Bankruptcy Court must determine, among other things, whether each Impaired Class has accepted the Plan.  Under section 1126 of the Bankruptcy Code, an Impaired Class is deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims in the Impaired Class  who have voted to accept or reject the Plan have voted to accept  the Plan.

Under section 1129(a)(10) of the Bankruptcy Code, if the Plan has a Class of Claims that is Impaired, at least one Impaired Class of Claims has to accept the Plan (determined without including any acceptance of the Plan by an insider).  However, under section 1126(f) of the Bankruptcy Code, Holders of Claims and Interests in a class are not entitled to vote if their contractual rights are Unimpaired by the proposed Plan.  Both Class 1 (General Unsecured Claims) and Class 2 (Guaranty and Subrogation Claim) are Unimpaired by the Plan, and such

Holders are conclusively deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.  Therefore, section 1129(a)(10) of the Bankruptcy Code does not apply.

Also, under section 1126(g) of the Bankruptcy Code, a Class of Claims or Interests are conclusively deemed to have rejected the Plan and not entitled to vote if the Holders of Claims or Interests in such Class will receive nor retain any property under the proposed Plan.  Interests in Class 3 (Interests) are not receiving any recovery under the Plan, is presumed to have rejected the Plan and is not entitled to vote on the Plan.

The classified Classes of Claims and Interests are treated as follows under the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | General Unsecured Claims | Unimpaired | No- Deemed to Accept |
| 2 | Guaranty and Subrogation Claim | Unimpaired | No- Deemed to Accept |
| 3 | Interests | Impaired | No- Deemed to Reject |

## ARTICLE II.
## HISTORY OF THE DEBTOR'S BUSINESS

### A.    The Debtor and its Members

The Debtor is a Delaware limited liability company organized pursuant to a Certificate of Formation dated as of February 1, 2013, and is registered to conduct business in the State of North Dakota and the State of Montana.  Prior to February 1, 2013, the Debtor was organized as a limited liability company under the laws of North Dakota. The Debtor changed its name from "Pioneer Transloading, LLC" to "Basin Transload, LLC" on or about November 19, 2008.

Pursuant to the Limited Liability Company Agreement of the Debtor, dated as of February 1, 2013 (the "**Operating Agreement**"), the Debtor has three members with the following percentage interests: Global Operating LLC (60%) (the "**Majority Member**"), TGC, L.P. (20%), and MBI Holdings, LLC (20%) (TGC, L.P. and MBI Holdings, LLC are referred to individually as a "**Minority Member**" and collectively as the "**Minority Members**", and together with the Majority Member, the "**Members**").  The Operating Agreement provides that the management of the Debtor is fully vested in the Members.  The Debtor does not have managers but under the Operating Agreement the Members act collectively through a committee of the whole referred to in the Operating Agreement as the "**Company Board**."  The Company Board consists of one director appointed by each Member.  Decisions of the Company Board shall require the approval of directors representing a majority of the percentage interests entitled to vote on such matter (except as provided otherwise in the Operating Agreement).

### B.    Nature of Business

The Debtor is a transloading and logistics company serving the Bakken region in North Dakota. It is headquartered in Waltham, Massachusetts.  The Debtor has two transloading and logistics facilities located in Republic Rail Stop, Beulah, ND (the "**Beulah Facility**"), and

Stampede Rail Stop, Columbus, ND (the "**Stampede Facility**", and together with the Beulah Facility, the "**Facilities**").  The Debtor offers transloading and logistics services (1) at the Beulah Facility for crude oil and frac sand, and (2) at the Stampede Facility for crude oil.  In addition, the Debtor offers a variety of railcar services at each of the Facilities, including railcar sorting, cleaning and storage.

The Debtor is a party to a certain Shared Services Agreement (as defined and discussed in Article III(B) below), and certain other arrangements, pursuant to which it receives from Global Partners LP ("**Global Partners**") personnel support and other services necessary for its operation.  The Majority Member is a wholly owned subsidiary of Global Partners.  No other party provides services to the Debtor under the Shared Services Agreement.  The Debtor does not employ any personnel.

During the 2019 calendar year, the Debtor had gross revenue of $1,800,697 with operating expenses of $1,938,356 resulting in operating deficit of $137,659.  In addition, during the 2019 calendar year, the Debtor incurred personnel and operating expenses (including bank fees) of $389,285.  These expenses were incurred at the corporate-level of the Debtor and allocable as between the Beulah Facility or the Stampede Facility.

### C.    Debtor's Operational Locations

In addition to its headquarters in Waltham, Massachusetts, the Debtor provides transloading and logistics solutions services from the Facilities with the support of services and personnel provided by Global Partners under the Shared Services Agreement.

### 1.    *Beulah Facility*

The Beulah Facility is a unit train capable transloading site served by BNSF Railway Company ("**BNSF**").  This facility offers bulk storage tanks, pump systems, self-service truck receiving bays, and inbound connection to the Andeavor High Plains pipeline.  Additional services include on-site railcar switching, storage, maintenance and cleaning, with available space for material laydown.  The Debtor owns 212.6 acres of the land on which the Beulah Facility is located.  In addition to the fee-owned property, the Debtor owns personal property and infrastructure at the Beulah Facility. The infrastructure at the Beulah facility includes bulk storage tanks, pump systems, a self-service truck receiving bays and pipeline connections. Certain additional land comprising the Beulah Facility is leased by the Debtor pursuant to the agreements described in Article III(B)(1) below.

During the 2019 calendar year, the Beulah Facility had gross revenue of $864,003 as compared to operating expenses of $1,032,320 resulting in a deficit of $168,317.

### 2.    *Stampede Facility*

The Stampede Facility is a unit train capable transloading site served by Canadian Pacific Railway.  It offers on-site railcar switching, storage, maintenance and cleaning, with available space for material laydown.

The Debtor owns 446.72 acres of land on which the Stampede Facility is located. Certain land comprising the Stampede Facility is leased by the Debtor pursuant to the agreements

described in Article III(B)(2) below. Unlike the Beulah Facility, Global Companies is the owner of a significant portion of the personal property and infrastructure at the Stampede Facility, including, without limitation, the bulk storage tanks and the self-served truck receiving bays and the pipeline connections.

To use, maintain, replace and operate its personal property and infrastructure at the Stampede Facility, Global Companies leases a certain portion of the Stampede Facility pursuant to the Global Land Lease (defined below) with the Debtor. Global Companies pays the Debtor $29,026 per month under the Global Land Lease. The term of the Global Land Lease runs annually.

In addition to its payments under the Global Land Lease, Global Companies shares in certain operating expenses and costs relating to operations at the Stampede Facility.  In 2019, Global Companies paid the Debtor approximately $38,000 per month for its share of such operating expenses and costs, together with fifty percent (50%) of the cost of certain of the utility services at the Stampede Facility.  In addition, under a Stampede Truck and Tank Terminal Operation Agreement effective January 1, 2019, Global Companies pays Basin for the services of 4 workers of the Stampede Facility for their services in connection with Global Companies' owned equipment including, without limitation, the storage tanks, at the Stampede Facility.

During the 2019 calendar year, the Stampede Facility had gross revenue of $936,694 as compared to operating expenses of $516,751 resulting in profit of $419,943. The Global Land Lease accounted for approximately $348,000 of the gross revenue at the Stampede Facility, and Global Companies paid the Debtor more than $456,000 for its share of the operating expenses and costs at the Stampede Facility.  Without such payments from Global Companies, the Stampede Facility would have had a deficit in excess of $380,000 during the 2019 calendar year.

### D.        Events Leading to Chapter 11 Filing

Since 2018, the Debtor has not generated sufficient annual revenue to adequately maintain its operations, and satisfy its obligations and debts to creditors in the ordinary course of business without depleting its cash balance.  Specifically, the Debtor's operations have resulted in negative EBITDA in 2018 ($758,407) and in 2019 ($137,658).  Such operating results are without regard to Basin's additional liability of approximately $13 million related to the Guaranty and Subrogation Claim.  Most recently, in first quarter of 2020, faced with a projected negative cash balance to fund the operating budget, the Debtor required capital contributions from its Members in the aggregate amount of $1 million.  (See Article IV.B. below)

In addition, as discussed in Article IV(A) below, the Minority Members have commenced an Arbitration Proceeding against Global Partners (the "**Guarantor**") and Global Operating LLC seeking an equitable dissolution of the Debtor and a determination that they do not owe their pro rata contributions to Global Partners under the Guaranty Letter Agreement (discussed in Art. IV.A. below).  The Debtor, however, is not named a party in the Arbitration Proceeding.  The Debtor does not believe that equitable dissolution of the Debtor is in the best interest of the Debtor's creditors, workers, customers and other parties-in-interest.

As further discussed in Article IV below, although the Arbitration Proceeding has not proceeded, beyond the initial pleading state, litigation has been filed in multiple jurisdictions including the Massachusetts Federal Court Action (since dismissed), the Massachusetts State

Court Action and the North Dakota Proceeding (all as defined and discussed in Art. IV.A. below).

# ARTICLE III.
## THE DEBTOR'S ASSETS AND LIABILITIES

### A.        The Debtor's Assets and Liabilities

As will be set forth in the Debtor's bankruptcy schedules and as described herein the Debtor owns certain real property and personal assets.  These consist primarily of real property and equipment located at the facilities previously described herein.

Specifically, the Debtor owes approximately $13.2 million in outstanding debt obligations (the "**Prepetition Debt Obligations**"), consisting of approximately: (i) $25,000 to $50,000 in general unsecured debt, and (ii) $13,142,039.00 on account of the Guaranty and Subrogation Claim held by Global Partners pursuant to a certain Irrevocable Limited Guaranty Agreement, dated as of April 3, 2014 (the "**Guaranty**"), made by Global Partners, as guarantor, in favor of Tesoro High Plains Pipeline Company LLC ("**Tesoro**") in connection with the Tesoro Agreement (as defined below).

As of December 31, 2019, the Debtor's unaudited financial statements reflected assets and liabilities having a net book value totaling $3,009,359, excluding the Guaranty and Subrogation Claim.  Including the Debtor's liability on the Guaranty and Subrogation Claims results in an adjusted negative book value of the Debtor of $(10,132,680).

### B.        Debtor's Contracts and Leases

The Debtor is a party to a certain Shared Services Agreement, dated as of February 1, 2013 (the "**Shared Services Agreement**"), with Global Partners and Diamond B Companies, Inc., which is owned by one of the Minority Members ("**Diamond B**").[2]  Pursuant to the Shared Services Agreement, Global Partners provides certain services to the Debtor,[3] which include accounting/tax, accounts payable, accounts receivable, credit, environmental, human resources, insurance, inventory accounting, IT/logistics, legal, marketing/business development and operations. Included as part of the foregoing are the services of approximately 11 employees on site in North Dakota and 1 remotely in Montana.  No other party presently provides services to the Debtor under the Shared Services Agreement.[4]

In addition, the Debtor is a party to the following leases and other contracts with respect to the Beulah Facility and the Stampede Facility:[5]

---

[2] Global Partners is the sole member of Global Operating LLC, the Majority Member of the Debtor. Diamond B is the general partner of TGC, L.P., one of the Minority Members of the Debtor.

[3] Per the terms of the Shared Services Agreement, Global Partners provides certain services to the Debtor for such period of time as Global Partners and the Debtor shall mutually agree.

[4] Diamond B originally provided services that included Rail Oil Logistics and corporate jet services under the Shared Services Agreement.  However, Diamond B no longer provides any services to the Debtor.

[5] The Debtor's contracts and leases noted above represent operative contracts and leases necessary for the Debtor's sustained operations of its business. There may be other non-essential or generic leases or contracts that have

## 1.    *Beulah Facility*

(i)    Commercial Lease between the Debtor, as tenant, and Mercer County Economic Development, as landlord, dated as of October 1, 2008:  This lease term is for 15 years with a right to renew. Under this lease the Debtor leases certain land and rail track siding and is required to pay the landlord base rent, oil volume rent if certain volume thresholds are reached and third party rent if the Debtor provides transloading services for other entities in addition to the Debtor's core activity of transloading petroleum.[6]  The Debtor is current on its obligations under this lease.

(ii)    Lease for Land and Track between the Debtor, as lessee, and BNSF, as lessor, dated as of July 1, 2011, as amended:  This lease was initially for a seven-year term with automatic renewal annually thereafter.  Under this lease, the Debtor leases certain land and rail track and is required to pay the lessor $62,730 per year, which amount is subject to percentage increase beginning in the seventh year.[7]  The Debtor is current on its obligations under this lease.

(iii)    Pipeline License (as of 2013) between the Debtor, as licensee, and BNSF, as licensor:  This agreement has a term of 25 years. Under this license, the Debtor is authorized to construct, maintain and use a pipeline for purposes of carrying crude oil alongside BNSF's rail corridor in Mercer County, North Dakota.  The Debtor paid a license fee in the amount of $5,000.00 at or around the time this license was executed.

(iv)    Master Haz-Mat Loaded Railcar Storage Agreement between the Debtor, as track owner, and Tesoro Refining & Marketing Company LLC, as customer, dated as of November 9, 2018:  This agreement was initially for a term of one year with automatic renewals monthly thereafter.  Under this agreement Debtor permits customer to store up to 200 loaded or empty rail cars on track owned or operated by the Debtor.  The Debtor charges customer certain per diem storage charges plus switching and cherry-picking charges.[8]

(v)    Storage Agreement between the Debtor and Global Companies dated as of March 25, 2020 (the "**Storage Agreement**"):  The term of the Storage Agreement is through December 31, 2020 and may be extended by Global Companies through April 30, 2021. Under the Storage Agreement, Global Companies stores oil with Debtor and pays Debtor a monthly storage fee of $66,600 plus certain additional receipt, transload and in-tank transfer fees.  The Storage Agreement was negotiated in good faith and at arm's length, and one of the Minority Members assented to the Storage Agreement prior to its execution.  The Minority Members now claim

---

inconsequential value (such as equipment contracts) or contracts that have expired, having been either terminated by the Debtor pre-petition or for which the contract terms have ended.

[6] The Debtor currently pays base rent of $20,763.51 per year.  Based on current activity at the Beulah Facility, the Debtor has not paid any oil volume rent or third party rent.  In addition, the Debtor is responsible for all utilities, maintenance, repair and insurance costs.

[7] The annual rental payment, beginning in the seventh year, is subject to increase by the greater of (i) 3%, or (ii) in accordance with the Consumer Price Index for all Urban Consumers as reported by the United States Department of Labor, Bureau of Labor Statistics.  The Debtor currently pays rent in the amount of $66,550.26 per year, in addition to certain additional costs as provided in the lease.

[8] In 2019, Tesoro paid the Debtor approximately $717,931 for all storage and service fees incurred under this agreement.

that certain terms of the Storage Agreement are "better than arm's length" in favor of Global Companies.

(vi)     Terminalling and Transloading Services Agreement between the Debtor and Tesoro Refining & Marketing Company LLC, as customer, dated as of April 16, 2020, but effective as of July 1, 2019:  Pursuant to this agreement, the Debtor provides certain terminal and transload related services at the Beulah Facility from time to time based upon the terms of one or more transaction confirmations agreed to by the parties.

### 2.     *Stampede Facility*

(i)     License and Private Siding Agreement No. 41159 (the "**Soo Siding Agreement**") between the Debtor, as user, and Soo Line Railroad Company (d/b/a Canadian Pacific) ("**CP**") as property owner, dated as of June 1, 2014, as amended:  This agreement was for 5 years with automatic renewal annually thereafter.  Under the Soo Siding Agreement, Debtor was granted access and permission to use a portion of railroad siding owned by CP for purposes of loading crude oil products for further transportation by CP.  Each year, Debtor pays CP $59,678 for access and use of CP's railroad siding, which amount is subject to an annual increase of three (3%) percent.

(ii)     Ground License between the Debtor, as owner, and Global Companies, as occupant, dated as of January 1, 2016 (the "**Global Land Lease**"):  This agreement was for 1 year with automatic renewal annually thereafter.  Pursuant to this agreement, Global Companies licenses an interest from the Debtor in the real property located at the Stampede Facility.  In exchange, Global Companies pays the Debtor a monthly fee in the amount of $29,026.  The monthly fee, however, is waived for any calendar month during which Global Companies transloads an average of 10,000 barrels/day of product from Global Companies infrastructure located on the licensed land onto rail cars at Debtor's adjacent Stampede Facility.  In 2019, Global Companies paid a total of $348,312 to Debtor under the Global Land Lease.

(iii)     Master Service Agreement between the Debtor, as track owner, and Halliburton Energy Services, Inc., as customer, dated as of March 21, 2019:  This agreement is initially for 5 years, subject to renewal, although it may be terminated early without cause by either party in accordance with the terms of the agreement.  Pursuant to this agreement, the Debtor stores up to 200 railcars at its Stampede Facility for which the Debtor charges a per diem, per railcar storage fee, transfer and detention fees plus additional handling charges with respect to any railcars actually stored at the Stampede Facility.  The Debtor receives on average approximately $8,600 per month under this agreement.

(iv)     Railcar Storage Agreement between the Debtor and Valero Marketing and Supply Company, as customer, dated March 26, 2020:  The term of this agreement is through September 30, 2020.  Under this agreement the Debtor permits the customer to store up to 200 empty rail cars on track owned or operated by the Debtor.  The Debtor assesses the customer certain per diem storage charges plus switching and cherry picking charges.

(v)     Stampede Truck and Tank Terminal Operation Agreement between the Debtor and Global Companies, effective January 1, 2019:  As mentioned above, under this agreement Global Companies pays Basin for the services of 4 workers for the Stampede Facility in

connection with Global Companies' owned equipment, including, without limitation, the storage tanks, at the Stampede Facility.

## ARTICLE IV.
## OPERATIONS AND CHAPTER 11 ISSUES

A.     **Guaranty Contribution Dispute and Litigation Among the Majority and Minority Members of the Debtor**

The Debtor entered into a certain Construction and Indemnity Agreement, dated as of April 3, 2014 (the "**Tesoro Agreement**"), with Tesoro.[9]  Under the Tesoro Agreement, Tesoro undertook to construct certain new facilities and make other improvements in order to build a new portion of the pipeline system and establish a new destination point at the Beulah Facility. The Debtor agreed to guarantee certain actual costs and an "agreed return" for Tesoro as defined in the Tesoro Agreement.

Global Partners, as the guarantor, guaranteed the obligations of the Debtor under the Tesoro Agreement pursuant to the Guaranty.  Pursuant to a letter agreement, dated as of April 3, 2014, by and among the Guarantor, the Debtor, and the Minority Members  (the "**Guaranty Letter Agreement**"), each Minority Member agreed to pay the Guarantor its pro rata contribution (20%) of the guaranteed payment if the Guarantor pays any amounts to Tesoro in respect of the guaranteed obligations under the Guaranty.

Ultimately, Tesoro sent the Debtor a termination notice on or about October 9, 2017, pursuant to which Tesoro cancelled the Tesoro Agreement effective October 6, 2017 and made demand for payment of $13,142,039.  The Debtor did not make the $13,142,039 payment.  On or about October 24, 2017, Tesoro sent notice to the Guarantor demanding payment.  The Guarantor paid the $13,142,039 to Tesoro on October 31, 2017.  Tesoro later provided to the Guarantor a release and termination of the Guaranty on or about August 30, 2018.

On October 1, 2019, the Guarantor sent a demand notice to the Minority Members for payment by each Minority Member of 20% of the guaranteed payment ($2,628,408 from each Minority Member).  Per the terms of the Guaranty Letter Agreement, the Minority Members had five business days from receipt of the notice of guaranty payment to pay the amounts due under the Guaranty Letter Agreement.  The Minority Members failed to pay the amounts due under the Guaranty Letter Agreement when due and have continued to refuse to do so.

<u>The Arbitration Proceeding</u>

On or about January 31, 2020, the Minority Members sent a Notice of Arbitration letter to the Guarantor and the Majority Member, and filed a Notice of Arbitration (the "**Notice of Arbitration**") against the Guarantor and the Majority Member (the "**Arbitration Proceeding**"). Under the Operating Agreement, the arbitration is governed by the International Institute for Conflict Prevention & Resolution ("**CPR**") rules for non-administered arbitration.  Pursuant to the Notice of Arbitration, the Minority Members seek equitable dissolution of the Debtor and a determination that they do not owe the Guarantor their respective 20% contributions of the

---

[9] In connection with the Tesoro Agreement, Tesoro and the Debtor also entered into a Connection Agreement and a certain Access and Easement Agreement.

guaranteed payment under the Guaranty Letter Agreement.  On February 20, 2020, the Guarantor sent a Notice of Non-Jurisdiction to the Minority Members in response to the Notice of Arbitration filed against the Guarantor.  On March 6, 2020, the Majority Member sent a Notice of Defense to the Minority Members in response to the Notice of Arbitration filed against the Majority Member. As of the Petition Date, one of the three arbitrators to the three-member panel as required under the Operating Agreement has not been selected, and the arbitration has not proceeded on any substantive issues.

The Massachusetts Federal Court Action

On February 20, 2020, the Guarantor filed a complaint against the Minority Members in the U.S. District Court for the District of Massachusetts (the "**Massachusetts Federal Court Action**") for breach of contract and for a declaration  that the Guarantor is not obligated, by the arbitration clause in the Operating Agreement, to participate in the Arbitration Proceeding.  The Debtor is not named a party in the Massachusetts Federal Court Action.  In the Massachusetts Federal Court Action  the principal of one of the Minority Members, TGC, L.P., filed a Declaration in which he  alleges, inter alia, in reference to the Tesoro obligation, that either a capital call should have been made or that the Guarantor should have "allowed [the Debtor] to explore bankruptcy or restructuring options...".   The Guarantor dismissed the Massachusetts Federal Court Action because of lack of subject matter jurisdiction on April 10, 2020.

The Massachusetts State Court Action

On April 9, 2020, the day before dismissal of the Massachusetts Federal Court Action, the Guarantor filed a complaint in Middlesex Superior Court in the Commonwealth of Massachusetts (the "**Massachusetts State Court Action**") against the Minority Members for the same claims as in the Massachusetts Federal Court Action: breach of contract to recover from each of the Minority Members payment of its respective 20% contributions of the guaranteed payment under the Guaranty Letter Agreement, and for a declaration  that the Guarantor is not obligated to arbitrate its claims.  The Debtor is not named a party in the Massachusetts State Court Action.  The Minority Members were served with the summons and complaint on April 17 and 20, 2020.

The North Dakota Proceeding

On April 13, 2020, the Minority Members filed an action in State Court of North Dakota, District Court of Northwest Judicial District, County of Divide against the Guarantor seeking to compel the Guarantor to arbitration and, in the alternative, a declaration that the Minority Members are not liable under the Guaranty Letter Agreement (the "**North Dakota Proceeding**").  The Debtor is not named a party in the North Dakota Proceeding.  On April 14, 2020, the Minority Members served the summons and complaint for the North Dakota Proceeding on the Guarantor.  The Guarantor moved to dismiss the complaint on May 5, 2020, and the Minority Members moved to compel arbitration on May 8, 2020.  A hearing on both motions is scheduled for June 3, 2020.

**B.**     **Required Contributions Under the Operating Agreement**

Pursuant to section 5.1 of the Operating Agreement, each member of the Debtor agrees to contribute all Required Contributions (as defined in the Operating Agreement) within five (5)

business days of any capital call issued by the Debtor.  A Required Contribution includes a Member's respective Percentage Interest (as defined in the Operating Agreement) share of any amounts necessary to fund the annual operating budget approved pursuant to section 3.8 of the Operating Agreement.  Under Section 3.8 of the Operating Agreement, approval by the Company Board (as defined in the Operating Agreement) of the annual operating budget requires the affirmative vote of one or more Directors (as defined in the Operating Agreement) representing sixty-seven percent (67%) or more of the Percentage Interests of those Directors entitled to vote.  Section 3.8 of the Operating Agreement also provides that if the Company Board is unable to approve any or all of the expenditures and items in any annual operating budget, then until such approval is obtained, expenditures and items equal to the amounts thereof that were included in the immediately preceding calendar year's approved annual operating budget, increased by twenty percent (20%), shall be considered the approved budgeted amounts.

A meeting of the Company Board was held on February 10, 2020 to, among other things, approve the annual operating budget for calendar year 2020.  Neither Director representing the Minority Members attended the meeting.  Only the Director representing the Majority Member was in attendance.  Under Section 3.4 of the Operating Agreement, a quorum consists of "sufficient Percentage Interests for the approval of all decisions to be approved at such meeting . . . for the transaction of business with respect to such action or decision." Because less than the requisite sixty-seven percent (67%) or more of the Percentage Interests of those Directors entitled to vote were present at the meeting, there was no quorum to approve the 2020 annual operating budget.  Therefore, it was determined at the meeting that the 2019 approved operating budget, increased by 20%, would be considered the approved annual operating budget for calendar year 2020.

It was noted at the February 10, 2020 meeting of the Company Board that, based on projected cash flow at that time, the Debtor estimated a negative cash balance to fund the annual operating budget beginning in June 2020.  Accordingly, on February 11, 2020, the Debtor sent to the Majority Member and the Minority Members a cash call notice, pursuant to which the Debtor sought Required Contributions of $1,000,000 in the aggregate to fund the projected shortfall under the Debtor's approved annual operating budget.  The Majority Member funded 60% of the Required Contributions ($600,000) on February 18, 2020. The Minority Members funded their collective 40% of the Required Contributions ($400,000) on February 18, 2020. The Minority Members' contributions were accompanied by a letter from their attorney reserving all rights under the arbitration process, including the right to seek recovery of their collective 40% of the Required Contributions.

### C.    Indemnification Claims

Pursuant to section 2.5(c) of the Operating Agreement, the Debtor is required to indemnify, protect, defend, release and hold harmless its members, directors, or officers (among others), to the extent acting in that capacity, from and against any and all Claims (as defined in the Operating Agreement) related to any litigation, arbitration or other proceedings. The Majority Member has asserted that the Debtor has a duty to indemnify it in connection with the Notice of Arbitration. On March 31, 2020, the Majority Member sent a letter to the Debtor to that effect and asserted that the Debtor is required to advance expenses to, and reimburse the expenses of, the Majority Member pursuant to the Debtor's indemnification obligations under section 2.5(c)

of the Operating Agreement. The Minority Members have advised the Debtor that they object to the Majority Member being provided any indemnification under the Operating Agreement.

Pursuant to paragraph 6 of the Shared Services Agreement, the Debtor is required to indemnify and hold harmless Global Partners and its officers, directors and employees (among others), from and against any and all losses, liabilities, damages, claims, and expenses (including reasonable attorneys' fees and expenses) which arise out of or are related to any action of Global Partners or any of its employees taken while performing services for the benefit of, or on behalf of, the Debtor, except to the extent any of the foregoing is caused by the gross negligence or willful misconduct of Global Partners or any of its employees or agents. Global Partners has asserted that the Debtor has a duty to indemnify it in connection with the North Dakota Proceeding. On May 27, 2020, Global Partners sent a letter to the Debtor to that effect and asserted that the Debtor is required to reimburse the expenses of Global Partners pursuant to the Debtor's indemnification obligations under paragraph 6 of the Shared Services Agreement.

### D.    Retention of Chief Restructuring Officer (CRO)

On May 21, 2020, the Debtor engaged CohnReznick LLP ("**CohnReznick**"), as the Debtor's Chief Restructuring Officer, and the Debtor intends to file on or about the Petition Date an Application with the Bankruptcy Court seeking approval to retain CohnReznick and designate Mr. Danner as its Chief Restructuring Officer and to engage CohnReznick to assist Mr. Danner in fulfilling his responsibilities to the Debtor. Mr. Danner's and CohnReznick's services will include, but not necessarily be limited to, responsibility for the Debtor's restructuring efforts including, but not limited to: (a) managing and guiding the Debtor's day to day business affairs; (b) assisting the Debtor in exploring restructuring alternatives; (c) assisting the Debtor in navigating a bankruptcy process, as needed, including preparation of documentation attendant to a bankruptcy filing; and (d) such other services as directed by the Board and agreed to by CohnReznick.

### E.    Retention of Professionals

The Debtor has engaged Ashby Geddes, P.A as its restructuring counsel, subject to approval of the Bankruptcy Court. The services the Debtor expects Ashby & Geddes to provide, and the terms of its retention, are set forth in the Debtor's Application to Retain Ashby & Geddes filed on or about the Petition Date.

### ARTICLE V.
### SUMMARY OF THE CHAPTER 11 PLAN

### A.    Overview

The Plan provides for the treatment of Claims and Interests as follows, and as more fully described herein:

- Holders of Allowed Priority Tax Claims, if any, and Allowed Administrative Expense Claims (including Professional Fee Claims, and Quarterly Fees) will be paid in full on the Effective Date.

- Holders of Allowed General Unsecured Claims will receive payment in full on the Effective Date or will receive such treatment that renders the Claims Unimpaired.

- The Allowed Guaranty and Subrogation Claim will receive payment in full or will receive such treatment that renders the Claim Unimpaired.

- Holders of Interests in the Debtor will have their Interests cancelled, annulled, and extinguished and will not receive or retain any property nor receive any distributions.

- On the Effective Date, and in exchange for the Acquisition Price, the New Member shall purchase and receive, and the Reorganized Debtor shall issue and deliver to 100% of the New Membership Interest in the Reorganized Debtor, free and clear of any lien, charge, pledge, security interest, claim, or other encumbrance.

In developing the Plan, the Debtor gave due consideration to various restructuring alternatives. In evaluating these alternatives, the Debtor, in consultation with its advisors, conducted a review of its current operations, prospects as an ongoing business, financial projections, and estimated recoveries in a chapter 7 liquidation scenario. The Debtor believes that any alternative to confirmation of the Plan, such as a chapter 7 liquidation or dissolution, would result in significantly less value available for distribution to its creditors, as demonstrated by the Liquidation Analysis attached as **Exhibit B**, and result in the Facilities' workers loss of their jobs. In addition, a Distribution Analysis is attached as **Exhibit C** (to be filed as a Plan Supplement), showing the proposed distributions under the Plan and source of funds.

**B.      Unclassified Claims**

**1.      *Summary***

| Claim | Plan Treatment | Projected Plan Recovery |
|---|---|---|
| Priority Tax Claims, if any | Paid in full | 100% |
| Administrative Expense Claims (including Quarterly Fees) | Paid in full | 100% |
| Professional Fee Claims | Paid in full | 100% |

**2.      *Details for Unclassified Claims***

(a) Priority Tax Claims

Except to the extent that Holders of Allowed Priority Tax Claims and the Debtor agree to a less favorable treatment, Holders of Allowed Priority Tax Claims, if any, shall receive, at the sole option of the Reorganized Debtor either (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Initial Distribution Date or the date such claim becomes an Allowed Claim (or as soon thereafter as practical), (b) through equal annual installment payments in Cash, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five years after the Petition Date, or (c) treatment in a

manner not less favorable than the most favored non-priority unsecured Claim provided for by the Plan.

(b) General Administrative Expense Claims

Subject to the terms of the Confirmation Order, holders of Allowed Administrative Expense Claims (other than Professional Fee Claims, or Quarterly Fees) shall be paid in full in Cash on the later of the Initial Distribution Date or the date such Administrative Expense Claim is Allowed and becomes due and payable, or as soon thereafter as is practicable; provided, however, that (i) Allowed Administrative Expense Claims that arise in the ordinary course of the Debtor's business, including Administrative Expense Claims arising from the Debtor's conduct of business in the ordinary course on or after the Petition Date, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions, without further action by the holders of such Administrative Claims or further approval by the Bankruptcy Court, and (ii) outstanding indebtedness due a lender, if any, which has made a loan to the Debtor after the Petition Date shall be deemed an Administrative Expense Claim not arising in the ordinary course of the Debtor's business.

Within thirty (30) days after the Effective Date, each holder of Administrative Expense Claims (other than Professional Fee Claims, Quarterly Fees or Claims arising in the ordinary course of the Debtor's business as described above) shall file its Administrative Expense Claim or, absent a written agreement with the Debtor to the contrary, shall be forever barred from asserting such Claim. Any objection to such filed Administrative Expense Claim must be filed within thirty (30) days after the filing of such Administrative Expense Claim or as otherwise ordered by the Bankruptcy Court.

(c) Professional Fee Claims

The Holders of Allowed Professional Fee Claims shall be paid in full in Cash on the later of: (i) the date such Allowed Professional Fee Claim becomes due in accordance with its terms, (ii) the Effective Date, or (iii) upon such other terms as may be mutually agreed upon between the Professional and the Debtor.

All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 329, 330, 331, 503, and/or section 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and serve final requests for payment of Professional Fee Claims no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtor and the applicable Professional within 30 days after the filing of the final fee application with respect to the Professional Fee Claim, or as otherwise ordered by the Bankruptcy Court.

(d) Quarterly Fees

All U.S. Trustee Quarterly Fees shall be paid by the Debtor on the Effective Date. After the Effective Date, the Reorganized Debtor shall be liable for any and all Quarterly Fees when and to the extent they are due and payable after the Effective Date.

### C.    Classified Claims and Interests

#### 1.    *Summary*

The Plan provides for classification of Claims and Interests.  The table below summarizes the classification, treatment, and voting rights of the Claims and Interests, by Class, under the Plan.

| Class | Claim or Interest | Voting Rights | Treatment |
|---|---|---|---|
| 1 | General Unsecured Claims | Not entitled to vote/ presumed to accept the Plan | Paid in full in Cash/ Reinstated/ Unimpaired |
| 2 | Guaranty and Subrogation Claim | Not entitled to vote/ presumed to accept the Plan | Paid in full in Cash/ Reinstated/ Unimpaired |
| 3 | Interests | Not entitled to vote/ deemed to not accept the Plan | Extinguished with No Recovery/ Impaired |

#### 2.    *Classified Claims and Interests Details*

Each Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtor and such Holder.  Unless otherwise indicated, each such Holder shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

**Class 1 – General Unsecured Claims**

(a)    <u>Classification</u>: Class 1 consists of all General Unsecured Claims.

(b)    <u>Treatment</u>. Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed General Unsecured Claim, in the sole discretion of the Reorganized Debtor, to be determined prior to the Effective Date:

(i)    will receive payment in full in Cash, including any interest to which it may be entitled under applicable law, on the later of (A) the Initial Distribution Date or (B) the date on which such General Unsecured Claim becomes an Allowed Claim payable under applicable law or any agreement relating thereto; or

(ii)    the Plan will leave unaltered the legal, equitable, and contractual rights to which the Allowed Claim entitles the Holder of such Claim.

(c)    Voting: Allowed Claims in Class 1 are Unimpaired.  Each Holder of an Allowed Claim in Class 1 shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject the Plan.

## Class 2 – Guaranty and Subrogation Claim

(a)    Classification: Class 2 consists of the Guaranty and Subrogation Claim.

(b)    Treatment: Except to the extent that the Holder of the Guaranty and Subrogation Claim agrees to a less favorable classification or treatment, the Holder of the Allowed Guaranty and Subrogation Claim, in the sole discretion of the Reorganized Debtor, to be determined prior to the Effective Date:

(i)    will receive payment in full in Cash, including any interest to which it may be entitled under applicable law, on the later of (A) the Initial Distribution Date or (B) the date on which such Guaranty and Subrogation Claim becomes an Allowed Claim payable under applicable law or any agreement relating thereto; or

(ii)    the Plan will leave unaltered the legal, equitable, and contractual rights to which the Allowed Claim entitles the Holder of such Claim.

Notwithstanding the foregoing, and with the written agreement of the Guarantor, a portion of the Allowed Guaranty and Subrogation Claim may be used by the New Member, to the extent needed, to acquire the New Membership Interest,, as further discussed in, and subject to, section 5.3 of the Plan.  To the extent that less than all of the Allowed Guaranty and Subrogation Claim is so used, the remaining amount of such Claim shall not be discharged and shall be a debt of the Reorganized Debtor following the Effective Date.

(c)    Voting: The Allowed Claim in Class 2 is Unimpaired.  The Holder of the Allowed Claim in Class 2 shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject the Plan.

## Class 3 – Interests

(a)    Classification: Class 3 consists of all Interests in the Debtor.

(b)    Treatment: On the Effective Date, all Interests in the Debtor shall be extinguished and the Holders of such Interests shall not receive or retain any distribution, property, or other value on account of such Interests.

(c)    Voting: Interests in Class 3 are Impaired.  The Holders of Allowed Class 3 Interests shall be conclusively deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### D.    Implementation of the Plan

#### 1.    *Sources of Payments; Working Capital*

Under the Plan, the Reorganized Debtor shall fund distributions and satisfy applicable Allowed Claims, and shall have adequate working capital, with (i) Cash on hand, (ii) the amount to be paid by the New Member for the New Membership Interest as described in section 5.3 of the Plan, and (iii) by working capital, as appropriate, to be provided by the New Member.

Contemporaneously with paying the Acquisition Price, the New Member shall provide the Reorganized Debtor with working capital sufficient to commence its business after the Effective Date.

#### 2.    *New Membership Interest*

On the Effective Date, the New Member shall purchase and receive, and the Reorganized Debtor shall issue and deliver to 100% of the New Membership Interest in the Reorganized Debtor, free and clear of any lien, charge, pledge, security interest, claim, or other encumbrance. The acceptance of the New Membership Interest under the Plan shall be deemed as an agreement for acceptance of the New Organizational Documents, each as may be amended or modified from time to time following the Effective Date in accordance with its terms.

For purposes of section 5.3 of the Plan, the consideration paid by the New Member for the New Membership Interest (the "**Acquisition Price**") shall be equal to the greater of (A) the Valuation of the Debtor (as defined herein) or (B) the total of payments due from the Debtor under the Plan to Holders of the following Claims (the "**Creditor Claims**"): (1) Allowed Class 1 and 2 Claims (but in the case of Class 2 only to the extent that the Debtor elects not to leave such claim unaltered in accordance with the treatment provided under the Plan to Class 2;(2) the Allowed Priority Tax Claims, if any; (3) Quarterly Fees not yet paid,;(4) cure costs, if any, necessary to assume any Executory Contracts and Unexpired Leases,; (5) Allowed Administrative Expenses; and (6) Allowed Professional Fee Claims not included in any of the foregoing. The Acquisition Price shall be made: **first**, by paying the amount necessary to pay the Creditor Claims (the "**Minimum Payment**"), and **second**, notwithstanding the foregoing in respect to inclusion of the Class 2 Claim and if (i) the Class 2 Claim is left unaltered and (ii) the Guarantor consents, by reducing the amount due under the Plan in respect to the Class 2 Claim on the Effective Date equal to the difference between the Minimum Payment and, if higher, the Valuation of the Debtor.  Nothing herein is intended to or shall limit the right of the Guarantor to pursue any reimbursement or contribution claim against the Minority Members under the Guaranty Letter Agreement except to the extent that the Class 2 Claim is reduced, if at all, for the purpose of the New Member acquiring the New Membership Interest.

#### 3.    *Valuation of the Debtor*

At the Plan Confirmation Hearing, the Court shall value the Debtor's business/assets (the "**Valuation of the Debtor**") unless the Members reach an agreement as to the Valuation of the Debtor, based on a report of an independent valuation expert to be retained by the Debtor before the Confirmation Hearing.

### 4. *Corporate Governance*

On the Effective Date, an amended and restated limited liability company agreement and amended certificate of formation of the Reorganized Debtor, if any, shall go into effect.  After the Effective Date, the Reorganized Debtor may amend and restate its certificate of formation, limited liability company agreement, or similar governing documents, as applicable, as permitted by applicable law.

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the number and identify of the new company board, manager and/or officers of the Reorganized Debtor shall be selected and approved by the New Member, with such information to be identified in the Plan Supplement prior to the Confirmation Hearing. After the Effective Date, the New Organization Documents, as each may be amended thereafter from time to time, shall govern the designation and election of the new company board, manager and/or officers of the Reorganized Debtor.

On the Effective Date, (i) the selection of the new company board, manager and/or officers for the Reorganized Debtor, (ii) the issuance and distribution of the New Membership Interest, and (iii) all other actions and transactions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan).  On and after the Effective Date, the appropriate management of the Reorganized Debtor shall be authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtor.

### E. Treatment of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (i) was previously assumed or rejected by the Debtor , (ii) previously expired or terminated pursuant to its own terms, (iii) is subject to a motion to reject such Executory Contract or Unexpired Lease filed prior to the Effective Date, or (iv) appears on the "*List of Executory Contracts and Unexpired Leases to be Rejected at the Confirmation Hearing*" that will be filed with the Plan Supplement. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and the rejection of any Executory Contract or Unexpired Lease for which a motion to reject has been filed, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed pursuant to Article VI of the Plan shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume or reject Executory Contracts of Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including any "change of control" provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor

party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Except as set forth in the Plan Supplement, there are no anticipated cure obligations with respect to any Executory Contract or Unexpired Lease to which the Debtor is a party. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any Executory Contract or Unexpired Lease assumed pursuant to the Plan. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (i) each such assumption is in the best interest of the Debtor and the Estate and (ii) the requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied. All contracts, agreements and leases that were entered into by the Debtor or assumed by the Debtor after the Petition Date shall be deemed assigned by the Debtor to the Reorganized Debtor on the Effective Date, as applicable.

### F.   Provisions Governing Distributions

Other than as specifically set forth in the Plan, the Reorganized Debtor shall make, or cause to be made, all distributions required to be made under the Plan. The Reorganized Debtor may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off and/or recoup against any Claim the payments or other distributions to be made pursuant to the Plan in respect of such Claim, or claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the holder of such Claim; provided, however, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any claim that the Debtor or the Reorganized Debtor may assert against any holder of an Allowed Claim.

Any objections to Claims against the Debtor may be prosecuted by the Reorganized Debtor. Except as otherwise provided by order of the Bankruptcy Court, such objection to a Claim against the Debtor may be filed by the Claims Objection Deadline.

### G.   Discharge, Releases, Exculpation, and Injunctions

#### 1.   *Discharge*

Except as otherwise provided in the Plan, by operation of law, or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Interests of any nature whatsoever, whether known or unknown, against the Debtor or the Estate, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests. On the Effective Date, and except as provided in the Plan or Confirmation Order, the Debtor shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, General Unsecured Claims, and Interests in the Debtor.

## 2. *Releases*

*Release by the Debtor*: As of the Effective Date, each Released Party will be deemed released and discharged by the Debtor, the Reorganized Debtor, and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, the Reorganized Debtor, or the Estate, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor , the Reorganized Debtor, or the Estate or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor  or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in or out of court restructuring efforts, intercompany transactions, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a Final Order of the Bankruptcy Court; *provided that* any right to enforce the Plan and Confirmation Order is not so released by the Plan. Nothing herein is intended to or shall limit the right of the Guarantor to pursue any reimbursement or contribution claim against the Minority Members under the Guaranty Letter Agreement except to the extent that the Class 2 Claim is reduced, if at all, for the purpose of acquiring the New Membership Interest.

*Releases by Holders of Claims and Interests*: As of the Effective Date, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, Reorganized Debtor, and each Released Party from any and all any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of the Debtor, the Reorganized Debtor, or the Estate, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor , the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in or out of court restructuring efforts, intercompany transactions, the Chapter 11 Case, the formulation,

preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a Final Order of the Bankruptcy Court; *provided that* any right to enforce the Plan and Confirmation Order is not so released by the Plan.

### 3.    *Exculpation*

Pursuant to section 1125(e) of the Bankruptcy Code or otherwise, from and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any holder of a Claim or an Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulating, negotiating, or implementing the Plan, the Plan Supplement, the Disclosure Statement, any solicitation of acceptances of the Plan, confirmation, and the pursuit thereof, the consummation of the Plan, the administration of the Plan, the property to be distributed under the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Case  or implementation of the Plan.

### 4.    *Injunctions*

<u>*Discharge Injunction*</u>: As of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtor or the Reorganized Debtor and their respective assets and property or the Estate, any other or further Claims or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, relating to the Debtor or Reorganized Debtor  or any of their respective assets and property or the Estate, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtor, the Reorganized Debtor, or their respective assets, property and Estate at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons or Entities who have held, hold or may hold Claims or Interests that arose prior to the Effective Date and all other parties-in-interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against or Interest in the Reorganized Debtor or

property of the Reorganized Debtor, other than to enforce any right to a distribution pursuant to the Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtor or property of the Reorganized Debtor, other than to enforce any right to a distribution pursuant to the Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Reorganized Debtor or against the property or interests in property of the Reorganized Debtor, other than to enforce any right to a distribution pursuant to the Plan or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtor or against the property or interests in property of the Reorganized Debtor, with respect to any such Claim or Interest.  Such injunction shall extend to any successors or assignees of the Reorganized Debtor and their respective properties and interest in properties.

_Injunctions Related to Exculpation and Releases_: Except as expressly provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action, or liability of any nature whatsoever, of the types described in section 9.4 or 9.5 of the Plan and relating to the Debtor, the Reorganized Debtor or any of their respective assets and property and/or the Estate, the Chapter 11 Case, the Plan, the Plan Supplement, and/or the Disclosure Statement are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions against any Exculpated Party or Released Party, as applicable, or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action, or liabilities: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under section 9.2 of the Plan; and/or (v) commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order

## H.    Conditions to the Effective Date and Consummation of the Plan

The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with section 8.2 of the Plan:

(a)    The Bankruptcy Court shall have entered an order approving the Disclosure Statement Order, in form and substance satisfactory to the Debtor and the New Member, and such order shall be a Final Order.

(b)    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance satisfactory to the Debtor and the New Member, and the Confirmation Order shall be a Final Order.

(c)     The Debtor shall have issued the New Membership Interest (with all conditions precedent thereto having been satisfied or waived).

(d)     The Definitive Documentation shall have been executed and delivered.

(e)     The New Member shall have paid the Acquisition Price.

Except for the condition set forth in Sections 8.1(a) - (d) of the Plan, the Debtor may, with the consent of the New Member, waive one or more of the conditions precedent to the effectiveness of the Plan set forth in section 8.1 of the Plan, without notice to any creditors or parties in interest and without Bankruptcy Court approval.

If the Confirmation Order is vacated: (a) the Plan shall be null and void in all respects; and (b) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court.

## I.     Retention of Jurisdiction

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law.

## ARTICLE VI.
## CONFIRMATION PROCEDURES

### A.     Requirements for Confirmation of the Plan

Under section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, may hold a hearing to confirm a plan of reorganization.  Among the requirements for confirmation are that the Plan is accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, is feasible, and is in the "best interests" of Holders of Claims and Interests that are Impaired under the Plan.  Classes 1 (General Unsecured Claims) and Class 2 (Guaranty and Subrogation Claim) are Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, such Holders are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.  Class 3 (Interests) is Impaired by the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, such Holders are conclusively presumed not to have accepted the Plan and will not vote on the Plan.  While the Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code, the Debtor believes that the Bankruptcy Court may confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

### B.     Best Interests of Creditors / Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code.  Class 1(General Unsecured Claims) and Class 2 (Guaranty and Subrogation Claim) are Unimpaired.

The Debtor believes that under the Plan Class 3 (Interests) will receive property with a value not less than the value such Holders would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Debtor's belief is based primarily on (i) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to such Holders and (ii) the Liquidation Analysis attached hereto as **Exhibit B** (to be filed as a Plan Supplement).

### C.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan of reorganization is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed its ability to meet obligations under the Plan.

Upon the Effective Date, the New Member shall make available, or cause to be made available, to the Reorganized Debtor the Acquisition Price as set forth in section 5.3 of the Plan, approximately [$_____], to enable the Reorganized Debtor to fund or pay all of its obligations required to be funded or paid under the Plan. See Distribution Analysis attached as **Exhibit C** to the Disclosure Statement (to be filed as part of the Plan Supplement).

Accordingly, the Debtor believes that confirmation is not likely to be followed by liquidation or the need for further reorganization.

### D.    Confirmation without Acceptance by Impaired Class

Under section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm a plan of reorganization over the rejection or deemed rejection of the plan of reorganization by a class of claims or interests if the plan of reorganization "does not discriminate unfairly" and is "fair and equitable" with respect to such class.

### 1.    *No Unfair Discrimination*

This test applies to Classes that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." The Debtor does not believe the Plan discriminates unfairly against any Impaired Class. The Debtor believes the Plan and the treatment of all Classes under the Plan satisfy the foregoing requirements for nonconsensual confirmation.

### 2.    *Fair and Equitable*

This test applies to Classes of different priority and status (*e.g*., secured versus unsecured) and includes the general requirement that no Class of Claims or Interests receive more than 100 percent of the amount of the allowed Claims or Interests in such Class. As to a dissenting Class, the test sets different standards depending on the type of Claims or Interests of the Debtor in such Class. In order to demonstrate that a plan is fair and equitable, the plan proponent must demonstrate:

- *Class of Unsecured Claims*: That either (a) each holder of an impaired unsecured claim receives or retains under the plan property of a value equal to the amount of

its allowed claim or (b) the holders of claims and interests that are junior to the claims of the non-accepting class will not receive or retain any property under the plan. As discussed above, Classes 1 and 2 are not Impaired under the Plan.

- *Class of Equity Interests*: That either (a) each holder of an impaired interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest, or (b) the holders of interests that are junior to the non-accepting class will not receive or retain any property under the plan.  The Debtor believes that the Plan satisfies the "fair and equitable" requirement notwithstanding that Class 3 is deemed to reject the Plan because there is no Class of equal priority receiving more favorable treatment and no Class that is junior to such Class will receive or retain any property on account of the Claims or Interests in such Class.

**E.      Alternatives to Confirmation and Consummation of the Plan**

The Debtor has evaluated several alternatives to the transactions set forth in the Plan. The Debtor believes that the Plan is the preferred approach to effectuating the Debtor's restructuring and maximizing the prospects of a successful turnaround and value for all stakeholders and, therefore, is in the best interests of all constituencies.  If the Plan is not confirmed, the Debtor's ability to continue operating as a going concern could be severely jeopardized.  The realistic alternatives likely will be either (i) the preparation and presentation of an alternative plan of reorganization, (ii) a sale of some or all of the assets of the Debtor pursuant to section 363 of the Bankruptcy Code, or (iii) a liquidation under chapter 7 of the Bankruptcy Code.  As demonstrated by the Liquidation Analysis, attached as **Exhibit B** to the Disclosure Statement (to be filed as a Plan Supplement), the Debtor believes that any alternative to confirmation of the Plan would result in significantly less value available for distribution to its creditors.

## ARTICLE VII.
## RISK FACTORS

The following provides a summary of various important considerations and other risk factors associated with the Plan; however, it is not exhaustive.  There are risks, uncertainties, and other important factors that could cause the Debtor's actual performance or achievements to be materially different from those projected in the Disclosure Statement.

**A.      General**

While the Debtor believes that the Chapter 11 Case will be of short duration and will not be materially disruptive to the Debtor's business, the Debtor cannot be certain that this will be the case.  Although the Plan is designed to minimize the length of the Chapter 11 Case, it is impossible to predict with certainty the amount of time that the Debtor may spend in bankruptcy or to assure parties in interest that the Plan will be confirmed.

**B.      The Conditions Precedent to the Effective Date of the Plan May Not Occur**

As more fully set forth in Article VIII of the Plan, the Effective Date is subject to conditions precedent, which the Debtor believes are achievable.  If such conditions precedent are not satisfied or waived, the Effective Date will not occur.

**C.      Non-Confirmation or Delay of Confirmation of the Plan**

The Bankruptcy Court may determine that the Disclosure Statement did not satisfy the requirements of the Bankruptcy Code or the Bankruptcy Rules or may decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met.  If the Debtor fails to achieve confirmation, the Chapter 11 case would likely continue for a protracted period without indication of how or when the Chapter 11 case may be completed. Some of the risks that the Debtor faces in a bankruptcy proceeding would become more acute in such a scenario, including certain risks that are beyond its control, such as further deterioration or other changes in economic conditions, potential revaluing of its assets due to chapter 11 proceedings, and increasing expenses.

If the Plan is not confirmed by the Bankruptcy Court, (a) the Debtor may not be able to successfully reorganize; (b) the distributions that Holders of Claims or Interests ultimately would receive, if any, with respect to their Claims or Interests is uncertain, and (c) there is no assurance that the Debtor will be able to successfully develop, prosecute, confirm, and consummate an alternative plan or modification of the Plan that will be acceptable to the Bankruptcy Court.

**D.      Non-Consensual Confirmation**

The Debtor intends to seek confirmation notwithstanding the deemed rejection of the Plan by Class 3 (Interests).  The Bankruptcy Court may confirm the Plan pursuant to the "cram-down" provisions of the Bankruptcy Code if the Plan satisfies section 1129(b) of the Bankruptcy Code. As discussed above, the Debtor believes that the Plan satisfies the "fair and equitable" requirement notwithstanding that Class 3 is deemed to reject the Plan.

**E.      Other Parties in Interest May Be Permitted to Propose Alternative Plans that Are Less Favorable to Certain Stakeholders**

Other parties in interest could seek authority from the Bankruptcy Court to propose an alternative plan of reorganization. Under the Bankruptcy Code, the Debtor initially has the exclusive right to propose and solicit acceptances of a plan of reorganization for a period of 120 days from filing.  Such exclusivity period can be reduced or terminated, however, upon order of the Bankruptcy Court for cause, which generally is for delay in promulgating a feasible plan.  Here that result is unlikely because the Plan, which the Debtor asserts is feasible, is filed concurrent with the commencement of the Chapter 11 Case.  Nonetheless, if such an order were to be entered, other parties in interest would then have the opportunity to propose one or more alternative plans of reorganization.

**F.      Conversion to Chapter 7**

If no plan of reorganization can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of Holders of Claims and Interests, the Chapter 11 case may

be converted to a case under chapter 7 of the Bankruptcy Code. In that instance, a trustee would be appointed or elected, but not be permitted to operate the Debtor absent Bankruptcy Court approval. Accordingly, the trustee would liquidate the Debtor's assets and distribute the net sale proceeds (after payment of chapter 11 and chapter 7 administrative fees and expenses) in accordance with the priorities established by the Bankruptcy Code. Alternatively, if the trustee does not determine any net value in the Debtor's assets in a hypothetical liquidation, then he or she may seek to merely abandon the assets.

### G.    Failure to Obtain Approval of Releases, Injunctions, and Exculpation

Article IX of the Plan provides for certain releases, injunctions, and exculpations, including third-party releases that may otherwise be asserted against the Debtor, the Reorganized Debtor, and the other Released Parties, among others. The releases, injunctions, and exculpations (including, for the avoidance of doubt, the definitions of Released Parties and Exculpated Parties) provided in the Plan are subject to objection by parties in interest and may not be approved. If the releases are not approved, certain parties may not be considered Released Parties and may withdraw their support for the Plan.

## ARTICLE VIII.
## TAX CONSEQUENCES OF THE PLAN

The Debtor has not requested a ruling from the IRS with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto. There can be no assurance that the IRS or any state or local taxing authorities will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained. FOR THE FOREGOING REASONS, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) TO THEM OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR, NOR IS THE DEBTOR RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.

## ARTICLE IX.
## CONCLUSION AND RECOMMENDATION

In the opinion of the Debtor, the Plan is preferable to any and all other available alternatives and provides for a larger distribution to the Debtor's creditors than would otherwise result from any other scenario. Any alternative to confirmation of the Plan, moreover, could result in extensive delays and increased administrative expenses. Accordingly, the Debtor urges Holders of Claims and Interests to support confirmation of the Plan.

BASIN TRANSLOAD, LLC

By:    _/s/ Eric Danner_____
Name: Eric Danner
Title:  Chief Restructuring Officer

DATED: June 1, 2020

{01570055;v1 }                         27

EXHIBIT A    Plan of Reorganization

EXHIBIT B    Liquidation Analysis (to be filed with Plan Supplement)

EXHIBIT C    Distribution Analysis (to be filed with Plan Supplement)

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

BASIN TRANSLOAD, LLC,

Chapter 11
Case No. 20-11462 (_____)

                    Debtor.

## CHAPTER 11 PLAN OF REORGANIZATION
## FOR BASIN TRANSLOAD, LLC

Dated: June 1, 2020
        Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*

William P. Bowden (No. 2553)
Gregory A. Taylor (No. 4008)
Stacy L. Newman (No. 5044)
Katharina Earle (No. 6348)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
Phone: (302) 654-1888
Facsimile: (302) 654-2067

*Proposed Counsel to Debtor and
Debtor-in Possession*

# TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ..................................... 1

ARTICLE II TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
    PRIORITY TAX CLAIMS.......................................................................................... 8

    2.1    General Administrative Expense Claims. ................................................................ 8
    2.2    Professional Fee Claims............................................................................................ 9
    2.3    Quarterly Fees ........................................................................................................... 9
    2.4    Priority Tax Claims................................................................................................... 9

ARTICLE III CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
    AND INTERESTS...................................................................................................... 9

    3.1    Summary of Classification and Treatment of Classified Claims and
            Interests. ...................................................................................................... 9
    3.2    Classified Claims and Interests............................................................................. 10
    3.3    Treatment of Claims against and Interests in the Debtor..................................... 10

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 11

    4.1    Acceptance by an Impaired Class of Claims ........................................................ 11
    4.2    Presumed Rejection by Impaired Class ................................................................ 12
    4.3    Presumed Acceptance by Unimpaired Classes .................................................... 12

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ......................................... 12

    5.1    Operations between the Confirmation Date and Effective Date........................... 12
    5.2    Sources of Payments .............................................................................................. 12
    5.3    New Membership Interest....................................................................................... 12
    5.4    Working Capital...................................................................................................... 13
    5.5    Valuation of the Debtor ......................................................................................... 13
    5.6    Section 1145 Exemption ........................................................................................ 13
    5.7    Corporate Governance. .......................................................................................... 13
    5.8    Continued Corporate Existence and Vesting of Assets in the Reorganized
            Debtor ........................................................................................................ 13
    5.9    Cancelation of Liens; Cancelation of Documents Evidencing Claims................. 14
    5.10   Settlement of Claims and Controversies............................................................... 14

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES.................................................................................................................... 14

    6.1    Assumption or Rejection of Executory Contracts and Unexpired Leases........... 14
    6.2    No Cure Obligations .............................................................................................. 15
    6.3    Assignment/ Postpetition Contracts and Leases .................................................. 15

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS............................................. 15

    7.1    Distributions by Reorganized Debtor .................................................................... 15
    7.2    Means of Cash Payment......................................................................................... 15
    7.3    Withholding and Reporting Requirements ........................................................... 15

7.4     Setoff and Recoupment..........................................................................16
7.5     Undeliverable or Non-Negotiated Distributions.....................................16
7.6     Objections to Claims.............................................................................16

ARTICLE VIII CONFIRMATION AND CONSUMMATION OF THE PLAN .......................17

8.1     Conditions to Effective Date.................................................................17
8.2     Waiver of Conditions............................................................................17
8.3     Vacatur of Confirmation Order.............................................................17
8.4     Notice of Effective Date ......................................................................17

ARTICLE IX EFFECT OF PLAN CONFIRMATION...............................................................17

9.1     Binding Effect......................................................................................17
9.2     Discharge. ...........................................................................................18
9.3     Release by the Debtor..........................................................................19
9.4     Releases by Holders of Claims and Interests .......................................19
9.5     Exculpation .........................................................................................20
9.6     Injunctions Related to Exculpation and Releases. ...............................20
9.7     Survival of Indemnification Obligations ...............................................21
9.8     Term of Bankruptcy Injunction or Stays ..............................................21

ARTICLE X RETENTION OF JURISDICTION ......................................................................21

10.1    Retention of Jurisdiction .....................................................................21

ARTICLE XI MISCELLANEOUS PROVISIONS.....................................................................21

11.1    Post-Effective Date Retention of Professionals....................................21
11.2    Effectuating Documents and Further Transactions...............................21
11.3    Exemption from Transfer Taxes ...........................................................21
11.4    Quarterly Reports................................................................................22
11.5    Amendment or Modification of the Plan ...............................................22
11.6    Severability of Plan Provisions.............................................................22
11.7    Closing of Chapter 11 Case. ................................................................22
11.8    Non-Consummation.............................................................................22
11.9    Notice..................................................................................................22
11.10   Governing Law ....................................................................................23
11.11   Filing of Additional Documents ...........................................................23
11.12   Reservation of Rights...........................................................................23

## INTRODUCTION

Basin Transload, LLC, a Delaware limited liability company (the "Debtor"), proposes the following plan of reorganization for the Debtor's reorganization case under Chapter 11 of the Bankruptcy Code and the resolution of the outstanding Claims and Interests. Capitalized terms used but not defined in this paragraph have the meanings assigned to them in Article I. The classification and treatment of Claims and Interests are set forth in Article II and Article III. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's business and operations, assets, projections, risk factors, a summary of the Plan, and related matters.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

A.      Defined Terms.  As used in the Plan, capitalized terms shall have the meanings set forth in this Article I.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1      Administrative Expense Claim means a Claim for costs and expenses of administration of the Chapter 11 Case (a) arising prior to the Petition Date solely to the extent such Claim arises under section 503(b)(9) of the Bankruptcy Code and (b) arising after the Petition Date and prior to the Effective Date under sections 328, 330, 363, 364(c), 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, without limitation: (i) any actual and necessary costs and expenses of preserving the Estate and operating the business of the Debtor after the Petition Date and Claims of governmental units for taxes related to tax years or periods commencing after the Petition Date; (ii) any Professional Fee Claim, and (iii) any Quarterly Fees.

1.2      Allowed means any Claim against the Debtor or Interest (a) for which (i) a proof of claim was timely and properly filed or, if no proof of claim was filed, the Claim is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent (and for which no contrary proof of claim has been filed), and (ii) no objection to the allowance of the Claim (including without limitation an objection based on rights of setoff or recoupment, or under sections 502(d), 510 or 549 of the Bankruptcy Code) or request to estimate the Claim has been interposed on or before the Claims Objection Deadline, or if any timely objection or request for estimation has been interposed, such Claim has been determined by a Final Order to be allowed in favor of the respective Claim holder (in which case the Allowed Claim shall equal the allowed amount as determined by such Final Order), (b) that is allowed pursuant to the terms of an agreement by and between the holder of such Claim or Interest and the Debtor or the Reorganized Debtor, as applicable, or (c) that is allowed by Final Order or under the terms of the Plan.

1.3      Acquisition Price shall have the meaning set forth in section 5.3.

1.4      Avoidance Actions means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtor arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, or 553(b) of the Bankruptcy Code, or under

similar or related state or federal statutes or common law, including fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s) or cause(s) of action was commenced prior to the Effective Date.

      1.5    <u>Bankruptcy Code</u> means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Case.

      1.6    <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the District of Delaware or any other court with jurisdiction over the Chapter 11 Case.

      1.7    <u>Bankruptcy Rules</u> means, collectively: (a) the Federal Rules of Bankruptcy Procedure, (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or any proceedings therein, and (c) the local rules of the Bankruptcy Court, all as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Case.

      1.8    <u>Business Day</u> means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

      1.9    <u>Cash</u> means legal tender of the United States of America.

      1.10    <u>Cause of Action</u> means any action, including any Avoidance Action, cause of action, liability, obligation, account, controversy, right to legal remedy, right to equitable remedy, right to payment, suit, debt, sum of money, damage, judgment, or Claim whatsoever, whether known or unknown, now or in the future, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, whether alleged, asserted or assertable directly or derivatively, in law, equity, admiralty, or otherwise, arising under any applicable law, regulation, or similar governmental pronouncement.

      1.11    <u>Chapter 11 Case</u> means the voluntary case under Chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date.

      1.12    <u>Claim</u> means a "claim," as defined in section 101(5) of the Bankruptcy Code.

      1.13    <u>Claims Objection Deadline</u> means the later of (i) forty-five (45) days after the Effective Date, or (ii) such greater period of limitation for the filing of an objection to any Claim as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor or the Reorganized Debtor, as applicable, and the Claim holder.

      1.14    <u>Class</u> means each category of holders of Claims or Interests established under Article III pursuant to sections 1122 and 1123(a)(l) of the Bankruptcy Code.

      1.15    <u>Confirmation Date</u> means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket.

      1.16    <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court on confirmation of the Plan, as such hearing may be continued from time to time.

1.17    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.18    Creditor Claims shall have the meaning set forth in section 5.3.

1.19    Debtor  shall have the meaning set forth in the preamble or introduction to the Plan.

1.20    Definitive Documentation means the definitive documents and agreements governing the Plan and the transactions contemplated thereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in the Plan (as amended, modified, or supplemented from time to time), including: (a) the Plan (and all exhibits and other documents and instruments related thereto); (b) the Plan Supplement; (c) the Disclosure Statement; (d) the New Organizational Documents, which shall be in each case in form and substance reasonably acceptable to the New Member.

1.21    Disclosure Statement means the written disclosure statement that relates to the Plan including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, in a manner acceptable to the Debtor and the New Member, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.22    Effective Date means, and shall occur on, the Business Day on which each of the conditions precedent to the occurrence of the Effective Date set forth in Article VIII has been satisfied or waived in accordance with the terms thereof.

1.23    Entity means an entity as defined in section 101(15) of the Bankruptcy Code.

1.24    Estate means the estate of the Debtor created in the Chapter 11 Case under section 541 of the Bankruptcy Code.

1.25    Exculpated Parties means collectively, in each case in its capacity as such: (a) the Debtor, (b) the Reorganized Debtor, and (c) with respect to each of the foregoing Entities in clauses (a) through (b), such Entity and its current and former affiliates, and such Entities' and their current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals. Exculpated Parties shall not include the Minority Members.

1.26    Executory Contracts means all executory contracts to which the Debtor is a party, as may be amended or modified and in effect from time to time.

1.27    Final Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Case (or on the docket of any other court of competent jurisdiction), which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move

for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion pursuant to section 502(i) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not solely cause such order not to be a Final Order.

1.28    General Unsecured Claims means Claims that are (i) not the Guaranty and Subrogation Claim, and (ii) not secured by a Lien or otherwise.

1.29    Guarantor means Global Partners LP.

1.30    Guaranty means the Irrevocable Limited Guaranty Agreement, dated as of April 3, 2014, made by the Guarantor in favor of Tesoro in connection with the Construction and Indemnity Agreement, dated as of April 3, 2014, by and between the Debtor and Tesoro.

1.31    Guaranty and Subrogation Claim means the pre-petition subrogation Claim of the Guarantor for $13,142,039.00 pursuant to the Guaranty, as permitted under section 509 of the Bankruptcy Code; *provided that* the Guaranty and Subordination Claim amount remains subject to the reimbursement and contribution claim of the Guarantor against the Minority Members pursuant to the Guaranty Letter Agreement.

1.32    Guaranty Letter Agreement means the letter agreement, dated as of April 3, 2014, by and among the Guarantor, the Minority Members, and the Debtor.

1.33    Holder means an Entity holding a Claim or Interest.

1.34    Impaired means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.35    Initial Distribution Date means that date which is ten (10) days following the Effective Date of the Plan (or as promptly thereafter as reasonably practicable).

1.36    Interest means any equity security within the meaning of section 101(16) of the Bankruptcy Code, including any issued and outstanding common stock, preferred stock, limited liability company interest, partnership interest, or any other instrument evidencing an ownership interest in the Debtor prior to the Effective Date (including prior to the Petition Date), whether or not transferable, and any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, rights of conversion, warrants, unvested common interests, unvested preferred interests or any other agreements of any character regarding equity securities of the Debtor.

1.37    Lien means, with respect to any interest in property, any mortgage, "lien" as defined in section 101(37) of the Bankruptcy Code, pledge, charge, security interest, easement, or encumbrance of any kind whatsoever affecting such interest in property.

1.38    LLC Agreement means the amended and restated Limited Liability Company Agreement of the Reorganized Debtor to be filed as part of the Plan Supplement.

1.39    Majority Member means Global Operating LLC, the majority member of the Debtor.

1.40    Minimum Payment shall have the meaning set forth in section 5.3 of the Plan.

1.41    Minority Members means TGC, L.P., and MBI Holdings, LLC, the minority members of the Debtor.

1.42    New Member means Global Companies LLC (or its designee).

1.43    New Membership Interest means the new limited liability company membership interest(s) in the Reorganized Debtor to be issued on the Effective Date pursuant to the terms of the Plan and the New Organizational Documents and comprising a 100% ownership interest in the Reorganized Debtor.

1.44    New Organizational Documents means the new bylaws, certificate of incorporation, certificate of formation, limited liability company operating agreement (including the LLC Agreement), certificates of limited partnership, agreements of limited partnership, shareholder agreements, or such other organizational documents of the Reorganized Debtor.

1.45    Person or person means a person as defined in section 101(41) of the Bankruptcy Code.

1.46    Petition Date means, the date on which the Debtor commenced the Chapter 11 Case.

1.47    Plan means this Chapter 11 plan of reorganization, including all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified by the Debtor from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.48    Plan Supplement means the supplement to the Plan to be filed with the Bankruptcy Court no later than ten (10) days prior to the deadline to object to confirmation of the Plan.

1.49    Priority Tax Claim means any Claim of a governmental unit of the kind against the Debtor entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.50    Professional means any Person retained by the Debtor or a statutory committee, if any, pursuant to a Final Order of the Bankruptcy Court entered pursuant to sections 327, 328, or 1103 of the Bankruptcy Code.

1.51    <u>Professional Fee Claim</u> means any Claim of a Professional for allowance of compensation and/or reimbursement of costs and expenses incurred in the Chapter 11 Case on or before the Effective Date.

1.52    <u>Quarterly Fees</u> has the meaning given to such term in section 2.4 of the Plan.

1.53    <u>Reinstate or Reinstated</u> means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder thereof, in compliance with section 1124 of the Bankruptcy Code.

1.54    <u>Released Parties</u> means, collectively, in each case in its capacity as such: (a) the Debtor and the Reorganized Debtor; (b) the New Member, the Guarantor and the Majority Member; and (c) with respect to each of the foregoing Entities in clauses (a) through (b), such Entity and its current and former affiliates, and such Entities' and their current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, *provided that* Released Parties shall not include the Minority Members.

1.55    <u>Releasing Parties</u> means, collectively, in each case in its capacity as such: (a) the Debtor and the Reorganized Debtor; (b) the New Member, the Guarantor and the Majority Member; (c) if applicable, each holder of a Claim entitled to vote to accept or reject the Plan that (i) votes to accept the Plan or (ii) either (A) votes to reject the Plan or (B) does not vote to accept or reject the Plan, **but in either case does not affirmatively elect to "opt out" of being a Releasing Party by timely objecting to the Plan's third-party release provisions under section 9.4 of the Plan**; (d) each holder of a Claim or Interest that is Unimpaired and presumed to accept the Plan; (e) each holder of a Claim or Interest that is deemed to reject the Plan that **does not affirmatively elect to "opt out" of being a Releasing Party by timely objecting to the Plan's third-party release provisions under s**ection 9.4 of the Plan; *provided that* Releasing Parties shall not include the Minority Members; and (f) with respect to the foregoing Entities in clauses (a) through (e), such Entity and its current and former affiliates, and such Entities' and their current and former affiliates' current and former directors, managers, officers, equity holders, (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial

advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

1.56    <u>Reorganized Debtor</u> means the Debtor and any successors on or after the Effective Date, after giving effect to the transactions implementing the Plan.

1.57    <u>Schedules</u> means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

1.58    <u>Tesoro</u> means Tesoro High Plains Pipeline Company LLC.

1.59    <u>U.S. Trustee</u> means the Office of the United States Trustee for the District of Delaware.

1.60    <u>Unexpired Lease</u> means a lease of nonresidential real property to which the Debtor is a party as may be amended or modified and in effect from time to time.

1.61    <u>Unimpaired</u> means with respect to a Claim, a Claim that is not Impaired, including any Claim that is Reinstated.

1.62    <u>Valuation of the Debtor</u> means the fair market value of the Debtor's business assets, as determined by the Bankruptcy Court at the Confirmation Hearing.

B.    <u>Rules of Interpretation</u>.  For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document, schedule, or exhibit filed or to be filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (e) all references in the Plan to Sections or Articles are references to Sections or Articles of the Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, subsection or clause contained in the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code (other than section 102(5) of the Bankruptcy Code) will apply; and (i) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries.

C.    <u>Computation of Time</u>. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment

or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

D.   Exhibits and Plan Supplement. All exhibits to the Plan, as well as the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

# ARTICLE II
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

2.1   General Administrative Expense Claims.

Subject to the terms of the Confirmation Order, holders of Allowed Administrative Expense Claims (other than Professional Fee Claims, or Quarterly Fees) shall be paid in full in Cash on the later of the Initial Distribution Date or the date such Administrative Expense Claim is Allowed and becomes due and payable, or as soon thereafter as is practicable; *provided, however*, that (i) Allowed Administrative Expense Claims that arise in the ordinary course of the Debtor's business, including Administrative Expense Claims arising from the Debtor's conduct of business in the ordinary course on or after the Petition Date,  shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions, without further action by the holders of such Administrative Claims or further approval by the Bankruptcy Court, and (ii) outstanding indebtedness due a lender, if any, which has made a loan to the Debtor after the Petition Date shall be deemed an Administrative Expense Claim not arising in the ordinary course of the Debtor's business.

Within thirty (30) days after the Effective Date, each holder of Administrative Expense Claims (other than Professional Fee Claims, Quarterly Fees or Claims arising in the ordinary course of the Debtor's business as described above) shall file its Administrative Expense Claim or, absent a written agreement with the Debtor to the contrary, shall be forever barred from asserting such Claim.  Any objection to such filed Administrative Expense Claim must be filed within 30 days after the filing of such Administrative Expense Claim or as otherwise ordered by the Bankruptcy Court.

2.2     Professional Fee Claims.

The Holders of Allowed Professional Fee Claims shall be paid in full in Cash on the later of: (i) the date such Allowed Professional Fee Claim becomes due in accordance with its terms, (ii) the Effective Date, or (iii) upon such other terms as may be mutually agreed upon between the Professional and the Debtor.

All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 329, 330, 331, 503, and/or section 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and serve final requests for payment of Professional Fee Claims no later than the first Business Day that is 45 days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtor and the applicable Professional within 21 days after the filing of the final fee application with respect to the Professional Fee Claim, or as otherwise ordered by the Bankruptcy Court.

2.3     Quarterly Fees. All fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtor on the Effective Date. After the Effective Date, the Reorganized Debtor shall be liable for any and all Quarterly Fees when and to the extent they are due and payable after the Effective Date.

2.4     Priority Tax Claims. Except to the extent that Holders of Allowed Priority Tax Claims, if any, and the Debtor  agree to a less favorable treatment, such Holders of Allowed Priority Tax Claims shall receive, at the sole option of the Reorganized Debtor  either (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Initial Distribution Date or the date such claim becomes an Allowed Claim (or as soon thereafter as practical), (b) through equal annual installment payments in Cash, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five years after the Petition Date, or (c) treatment in a manner not less favorable than the most favored non-priority unsecured Claim provided for by the Plan.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

3.1     Summary of Classification and Treatment of Classified Claims and Interests.

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for all purposes, including, without limitation, voting, confirmation and distributions pursuant to the Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount

greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.2     <u>Classified Claims and Interests</u>. The following chart identifies the classified Claims against and Interests in the Debtor, and the corresponding Classes.

| CLASS | CLAIM OR INTEREST |
|-------|-------------------|
| 1 | General Unsecured Claims |
| 2 | Guaranty and Subrogation Claim |
| 3 | Interests |

3.3     <u>Treatment of Claims against and Interests in the Debtor.</u>

Each Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtor and such Holder. Unless otherwise indicated, each such Holder shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

***Class 1: General Unsecured Claims.***

(a)     <u>Classification</u>: Class 1 consists of all General Unsecured Claims.

(b)     <u>Treatment</u>. Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed General Unsecured Claim, in the sole discretion of the Reorganized Debtor, to be determined prior to the Effective Date:

(i)     will receive payment in full in Cash, including any interest to which it may be entitled under applicable law, on the later of  (A) the Initial Distribution Date or (B) the date on which such General Unsecured Claim becomes an Allowed Claim payable under applicable law or any agreement relating thereto; or

(ii)     the Plan will leave unaltered the legal, equitable, and contractual rights to which the Allowed Claim entitles the Holder of such Claim.

(c)     <u>Voting</u>: Allowed Claims in Class 1 are Unimpaired. Each Holder of an Allowed Claim in Class 1 shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject the Plan.

*Class 2: Guaranty and Subrogation Claim.*

(a)  <u>Classification</u>: Class 2 consists of the Guaranty and Subrogation Claim.

(b)  <u>Treatment</u>: Except to the extent that the Holder of the Guaranty and Subrogation Claim agrees to a less favorable classification or treatment, the Holder of the Allowed Guaranty and Subrogation Claim, in the sole discretion of the Reorganized Debtor, to be determined prior to the Effective Date:

(i)  will receive payment in full in Cash, including any interest to which it may be entitled under applicable law, on the later of (A) the Initial Distribution Date or (B) the date on which such Guaranty and Subrogation Claim becomes an Allowed Claim payable under applicable law or any agreement relating thereto; or

(ii)  the Plan will leave unaltered the legal, equitable, and contractual rights to which the Allowed Claim entitles the Holder of such Claim.

Notwithstanding the foregoing, and with the written agreement of the Guarantor, a portion of the Allowed Guaranty and Subrogation Claim may be used by the New Member, to the extent needed, to acquire the New Membership Interest as further discussed in, and subject to, section 5.3 of the Plan.  To the extent that less than all of the Allowed Guaranty and Subrogation Claim is so used, the remaining amount of such Claim shall not be discharged and shall be a debt of the Reorganized Debtor following the Effective Date.

(c)  <u>Voting</u>: The Allowed Claim in Class 2 is Unimpaired. The Holder of the Allowed Claim in Class 2 shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject the Plan.

*Class 3: Interests.*

(a)  <u>Classification</u>: Class 3 consists of all Interests in the Debtor.

(b)  <u>Treatment</u>: On the Effective Date, all Interests in the Debtor shall be cancelled and extinguished and the Holders of such Interests shall not receive or retain any distribution, property, or other value on account of such Interests.

(c)  <u>Voting</u>: Interests in Class 3 are Impaired. The Holders of Allowed Class 3 Interests shall be conclusively deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1  <u>Acceptance by an Impaired Class of Claims</u>. Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class shall have accepted the Plan if, after excluding any Claims held by any Holder whose Claims have been designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds in dollar amount of the Allowed Claims

actually voting in such Class have voted to accept such Plan and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.

4.2     Presumed Rejection by Impaired Class. Class 3 (Interests) is Impaired by the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, such Holders are conclusively presumed not to have accepted the Plan and will not vote on the Plan.

4.3     Presumed Acceptance by Unimpaired Classes. Classes 1 (General Unsecured Claims) and Class 2 (Guaranty and Subrogation Claim) are Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, such Holders are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     Operations between the Confirmation Date and Effective Date. During the period from the Confirmation Date through and until the Effective Date, the Debtor may continue to operate its business as a debtor in possession in the ordinary course in a manner consistent with the transactions contemplated by the Plan, subject to all applicable orders of the Bankruptcy Court and the provisions of the Bankruptcy Code.

5.2     Sources of Payments. Under the Plan, the Reorganized Debtor shall fund distributions and satisfy applicable Allowed Claims, and shall have adequate working capital, with (i) Cash on hand, (ii) the amount to be paid by the New Member for the New Membership Interest as described in section 5.3 below, and (iii) by working capital, as appropriate, to be provided by the New Member.

5.3     New Membership Interest. On the Effective Date, the New Member shall purchase and receive, and the Reorganized Debtor shall issue and deliver to such Entity 100% of the New Membership Interest in the Reorganized Debtor, free and clear of any lien, charge, pledge, security interest, claim, or other encumbrance. The acceptance of the New Membership Interest under the Plan shall be deemed as an agreement for acceptance of the New Organizational Documents, each as may be amended or modified from time to time following the Effective Date in accordance with its terms.

For purposes of section 5.3 of the Plan, the consideration paid by the New Member for the New Membership Interest (the "Acquisition Price") shall be equal to the greater of (A) the Valuation of the Debtor or (B) the total of payments due from the Debtor under the Plan to Holders of the following Claims (the "Creditor Claims"): (1) Allowed Class 1 and 2 Claims (but in the case of Class 2 only to the extent that the Debtor elects not to leave such claim unaltered as permitted by Class 2(b)(ii)). (2) the Allowed Priority Tax Claims, if any, (3) Quarterly Fees not yet paid, (4) cure costs, if any, necessary to assume any Executory Contracts and Unexpired Leases, (5) Allowed Administrative Expenses, and (6) Allowed Professional Fee Claims not included in any of the foregoing. The Acquisition Price shall be made: **first**, by paying the amount necessary to pay the Creditor Claims (the "Minimum Payment"), and **second**, notwithstanding the foregoing in respect to inclusion of the Class 2 Claim and if (i) the Class 2 Claim is left unaltered and (ii) the Guarantor consents, by reducing the amount due under the Plan in respect to the Class 2 Claim on

the Effective Date equal to the difference between the Minimum Payment and, if higher, the Valuation of the Debtor.  Nothing herein is intended to or shall limit the right of the Guarantor to pursue any reimbursement or contribution claim against the Minority Members under the Guaranty Letter Agreement except to the extent that the Class 2 Claim is reduced, if at all, for the purpose of the New Member acquiring the New Membership Interest.

5.4     _Working Capital_.  Contemporaneously with the Acquisition Price, the New Member shall provide the Reorganized Debtor with working capital sufficient to commence its business after the Effective Date.

5.5     _Valuation of the Debtor_.  At the Plan Confirmation Hearing, the Court shall value the Debtor's business assets unless the members of the Debtor reach an agreement as to the Valuation of the Debtor, based on a report of an independent valuation expert to be retained by the Debtor before the Confirmation Hearing.

5.6     _Section 1145 Exemption_.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance and distribution of the New Membership Interest shall be exempt from any applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution or sale of securities.

5.7     _Corporate Governance._

(a)     _Certificate of Formation; LLC Agreement_.  On the Effective Date, the LLC Agreement and amended certificate of formation of the Reorganized Debtor, if any, shall go into effect.  After the Effective Date, the Reorganized Debtor may amend and restate its certificate of formation, limited liability company agreement, or similar governing documents, as applicable, as permitted by applicable law.

(b)     _The New Company Board/ Management_.  Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the number and identify of the new company board, manager and/or officers of the Reorganized Debtor shall be selected and approved by the New Member, with such information to be identified in the Plan Supplement prior to the Confirmation Hearing.  After the Effective Date, the New Organization Documents, as each may be amended thereafter from time to time, shall govern the designation and election of the new company board, manager and/or officers of the Reorganized Debtor.

(c)     _Corporate Action_.  On the Effective Date, (i) the selection of the new company board, manager and/or officers for the Reorganized Debtor, (ii) the issuance and distribution of the New Membership Interest, and (iii) all other actions and transactions contemplated by the Plan shall be deemed authorized and approved in all respects (subject to the provisions of the Plan).  On and after the Effective Date, the appropriate management of the Reorganized Debtor shall be authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtor.

5.8     Continued Corporate Existence and Vesting of Assets in the Reorganized Debtor .  On and after the Effective Date, after giving effect to each of the actions contemplated under the Plan, the Reorganized Debtor shall continue to exist in accordance with the applicable law in the

jurisdiction in which it is formed. Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided under the Plan, all property of the Estate, including all claims, rights, and Causes of Action and any property acquired by the Debtor or the Reorganized Debtor under or in connection with the Plan, shall revest in the Reorganized Debtor on the Effective Date free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as specifically provided in the Plan or the Confirmation Order. Thereafter, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules. As of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Liens and non-Reinstated Claims, except as specifically provided in the Plan or the Confirmation Order.

      5.9    <u>Cancelation of Liens; Cancelation of Documents Evidencing Claims</u>. Except as otherwise provided in the Plan, on the Effective Date, in consideration for the distributions to be made on the Effective Date pursuant to the Plan, all Liens, charges, and encumbrances related to any Claim or Interest, shall be terminated, null and void and of no effect. The holders of secured claims, if any, shall be authorized and directed to release any collateral or other property of the Debtor held by such Holder and to take such actions as may be requested by the Debtor (or the Reorganized Debtor, as the case may be) to evidence the release of any Liens, including the execution, delivery, and filing or recording of such release documents as may be requested by the Debtor (or the Reorganized Debtor, as the case may be). On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled and the obligations of the Debtor discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

      5.10    <u>Settlement of Claims and Controversies</u>. Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, and in consideration for the classification, distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness. The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

      6.1    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor  will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (i) was previously assumed or rejected by the Debtor , (ii) previously expired or terminated pursuant to its own terms, (iii) is subject to a motion to reject such Executory Contract or Unexpired Lease filed

prior to the Effective Date, or (iv) appears on the "List of Executory Contracts and Unexpired Leases to be Rejected at the Confirmation Hearing" that will be filed with the Plan Supplement. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and the rejection of any Executory Contract or Unexpired Lease for which a motion to reject has been filed, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed pursuant to this Article VI shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume or reject Executory Contracts of Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including any "change of control" provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

6.2    No Cure Obligations. Except as set forth in the Plan Supplement, there are no anticipated cure obligations with respect to any Executory Contract or Unexpired Lease to which the Debtor is a party. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any Executory Contract or Unexpired Lease assumed pursuant to the Plan. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (i) each such assumption is in the best interest of the Debtor and the Estate and (ii) the requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied.

6.3    Assignment/ Postpetition Contracts and Leases. All contracts, agreements and leases that were entered into by the Debtor or assumed by the Debtor after the Petition Date shall be deemed assigned by the Debtor to the Reorganized Debtor on the Effective Date, as applicable.

### ARTICLE VII
### PROVISIONS GOVERNING DISTRIBUTIONS

7.1    Distributions by Reorganized Debtor. Other than as specifically set forth in the Plan, the Reorganized Debtor shall make, or cause to be made, all distributions required to be made under the Plan.

7.2    Means of Cash Payment. Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Reorganized Debtor, by (a) checks drawn on or (b) wire transfers from a bank selected by the Reorganized Debtor.

7.3    Withholding and Reporting Requirements. In connection with the Plan and all distributions thereunder, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized

Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Reorganized Debtor believes are reasonable and appropriate. All persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. No distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtor for the payment and satisfaction of such tax obligations.

7.4     Setoff and Recoupment. The Reorganized Debtor  may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off and/or recoup against any Claim the payments or other distributions to be made pursuant to the Plan in respect of such Claim, or claims of any nature whatsoever that the Debtor  or the Reorganized Debtor  may have against the holder of such Claim; provided, however, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any claim that the Debtor  or the Reorganized Debtor may assert against any holder of an Allowed Claim.

7.5     Undeliverable or Non-Negotiated Distributions. If any distribution is returned as undeliverable, no further distributions to the applicable Holder shall be made unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address, at which time the undeliverable distribution shall be made to such Holder without interest or dividends. All undeliverable distributions under the Plan that remain unclaimed for one year after attempted distribution shall indefeasibly revert to the Reorganized Debtor. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the Reorganized Debtor by the holder of the relevant Allowed Claim within the 90-calendar-day period. After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be deemed undeliverable as of the date of the original issuance of the check and shall indefeasibly revert to the Reorganized Debtor in accordance with the terms hereof, notwithstanding any federal or state escheat laws to the contrary.

7.6     Objections to Claims.  Any objections to Claims against the Debtor may be prosecuted by the Reorganized Debtor.  Except as otherwise provided by order of the Bankruptcy Court, such objection to a Claim against the Debtor may be filed by the Claims Objection Deadline.

## ARTICLE VIII
## CONDITIONS TO THE EFFECTIVE DATE AND CONSUMMATION OF THE PLAN

8.1     <u>Conditions to Effective Date</u>. The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with section 8.2 of the Plan:

(a)     The Bankruptcy Court shall have entered an order approving the Disclosure Statement, in form and substance satisfactory to the Debtor and the New Member, and such order shall be a Final Order.

(b)     The Bankruptcy Court shall have entered the Confirmation Order, in form and substance satisfactory to the Debtor and the New Member, and the Confirmation Order shall be a Final Order.

(c)     The Debtor shall have issued the New Membership Interest (with all conditions precedent thereto having been satisfied or waived).

(d)     The Definitive Documentation shall have been executed and delivered.

(e)     The New Member shall have paid the Acquisition Price.

8.2     <u>Waiver of Conditions</u>.  Except for the condition set forth in sections 8.1(a) - (d) of the Plan, the Debtor may, with the consent of the New Member, waive one or more of the conditions precedent to the effectiveness of the Plan set forth in section 8.1 above, without notice to any creditors or parties in interest and without Bankruptcy Court approval.

8.3     <u>Vacatur of Confirmation Order</u>.  If the Confirmation Order is vacated: (a) the Plan shall be null and void in all respects; and (b) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court.

8.4     <u>Notice of Effective Date</u>.  The Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date on the Effective Date or as soon as practicable thereafter.

## ARTICLE IX
## EFFECT OF PLAN CONFIRMATION

9.1     <u>Binding Effect</u>. On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of the Plan or the Plan Supplement, including all agreements, instruments, and other documents filed in connection with the Plan and executed by the Debtor or the Reorganized Debtor in connection with the Plan or the Plan Supplement, shall be binding upon the Debtor, the Reorganized Debtor, and all holders of Claims against and Interests in the Debtor  and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan, and all other parties that are affected in any manner by the Plan.  Except as expressly provided otherwise in the Plan, all agreements, instruments, and other documents filed in connection with the Plan shall be given full force and effect, and shall bind all parties referred to therein as of the

Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

9.2     Discharge.

(a)     Discharge of Claims and Termination of Interests.  Except as otherwise provided in the Plan, by operation of law, or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Interests of any nature whatsoever, whether known or unknown, against the Debtor or the Estate, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests.  On the Effective Date, and except as provided in the Plan or Confirmation Order, the Debtor shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, General Unsecured Claims, and Interests in the Debtor.

(b)     Discharge Injunction.  As of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtor or the Reorganized Debtor and their respective assets and property or the Estate, any other or further Claims or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, relating to the Debtor or Reorganized Debtor or any of their respective assets and property or the Estate, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtor, the Reorganized Debtor, or their respective assets, property and Estate  at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons or Entities who have held, hold or may hold Claims or Interests that arose prior to the Effective Date and all other parties-in-interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against or Interest in the Reorganized Debtor or property of the Reorganized Debtor, other than to enforce any right to a distribution pursuant to the Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtor or property of the Reorganized Debtor, other than to enforce any right to a distribution pursuant to the Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Reorganized Debtor or against the property or interests in property of the Reorganized Debtor, other than to enforce any right to a distribution pursuant to the Plan or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtor or against the property or interests in property of the Reorganized Debtor, with respect to any such Claim or Interest.  Such injunction

shall extend to any successors or assignees of the Reorganized Debtor and their respective properties and interest in properties.

9.3     <u>Release by the Debtor</u>. As of the Effective Date, each Released Party will be deemed released and discharged by the Debtor, the Reorganized Debtor, and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, the Reorganized Debtor, or the Estate, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor , the Reorganized Debtor, or the Estate  or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtor  or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor  or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor  and any Released Party, the Debtor's in or out of court restructuring efforts, intercompany transactions, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a Final Order of the Bankruptcy Court; *provided that* any right to enforce the Plan and Confirmation Order is not so released by this section.  Nothing herein is intended to or shall limit the right of the Guarantor to pursue any reimbursement or contribution claim against the Minority Members under the Guaranty Letter Agreement except to the extent that the Class 2 Claim is reduced, if at all, for the purpose of acquiring the New Membership Interest.

9.4     <u>Releases by Holders of Claims and Interests</u>.  As of the Effective Date, to the fullest extent permissible under applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, Reorganized Debtor, and each Released Party from any and all any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of the Debtor, the Reorganized Debtor, or the Estate, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor , the purchase, sale, or rescission of the purchase or sale of any security of the Debtor  or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor  and any Released Party, the Debtor's in or out of court restructuring efforts,

intercompany transactions, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a Final Order of the Bankruptcy Court; *provided that* any right to enforce the Plan and Confirmation Order is not so released by this section.

        9.5      <u>Exculpation</u>.  Pursuant to section 1125(e) of the Bankruptcy Code or otherwise, from and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any holder of a Claim or an Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulating, negotiating, or implementing the Plan, the Plan Supplement, the Disclosure Statement, any solicitation of acceptances of the Plan, confirmation, and the pursuit thereof, the consummation of the Plan, the administration of the Plan, the property to be distributed under the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Case  or implementation of the Plan.

        9.6      <u>Injunctions Related to Exculpation and Releases</u>.  Except as expressly provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, Cause of Action, or liability of any nature whatsoever, of the types described in section 9.4 or 9.5 of the Plan and relating to the Debtor, the Reorganized Debtor  or any of their respective assets and property and/or the Estate, the Chapter 11 Case, the Plan, the Plan Supplement, and/or the Disclosure Statement are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions against any Exculpated Party or Released Party, as applicable, or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action, or liabilities: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under section 9.2 of the Plan; and/or (v) commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

9.7    <u>Survival of Indemnification Obligations</u>. The obligations of the Debtor to indemnify and exculpate any past and present directors, officers, agents, employees and representatives who provided services to the Debtor prior to or after the Petition Date, pursuant to certificate of formation or articles of incorporation, by-laws, limited liability company agreement, contracts, and/or applicable statutes, in respect of all actions, suits, and proceedings against any of such officers, directors, agents, employees, and representatives, based upon any act or omission related to service with, for or on behalf of the Debtor, shall not be discharged or Impaired by confirmation or consummation of the Plan and shall be assumed by the Reorganized Debtor. For the avoidance of doubt, this section 9.7 affects only the obligations of the Debtor and Reorganized Debtor with respect to any indemnity or exculpation owed to or for the benefit of past and present directors, officers, agents, employees, and representatives of the Debtor.

9.8    <u>Term of Bankruptcy Injunction or Stays</u>. All injunctions or stays provided for in the Chapter 11 Case under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## ARTICLE X
## RETENTION OF JURISDICTION

10.1    <u>Retention of Jurisdiction</u>. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    <u>Post-Effective Date Retention of Professionals</u>. The Reorganized Debtor may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

11.2    <u>Effectuating Documents and Further Transactions</u>. Each of the Debtor and the Reorganized Debtor is authorized to execute, deliver, file or record such contracts, instruments, certificates, notes, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the New Membership Interest issued under or in connection with the Plan.

11.3    <u>Exemption from Transfer Taxes</u>. To the extent applicable, pursuant to section 1146(a) of the Bankruptcy Code: (a) the issuance, transfer or exchange of equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under the Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States.

11.4     <u>Quarterly Reports</u>. The Debtor shall file all Quarterly Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court Quarterly Reports in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Reorganized Debtor during the applicable period, attested to by an authorized representative of the Reorganized Debtor. The Reorganized Debtor shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

11.5     <u>Amendment or Modification of the Plan</u>. Subject to section 1127 of the Bankruptcy Code, the Debtor may alter, amend or modify the Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan. Any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

11.6     <u>Severability of Plan Provisions</u>. If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.

11.7     <u>Closing of Chapter 11 Case.</u> The Reorganized Debtor, promptly after the full administration of the Chapter 11 Case, shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case. Upon the filing of a motion to close the Chapter 11 Case, the Reorganized Debtor shall file a final report or other documents as required by law.

11.8     <u>Non-Consummation</u>. If consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

11.9     <u>Notice</u>. All notices, requests and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Basin Transload, LLC
800 South Street, Suite 500
Waltham, MA 02453
Attn: Eric Danner, Chief Restructuring Officer

with a copy to:

Ashby Geddes, P.A (Debtor's bankruptcy counsel)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899
Telephone: 302-654-1888
Attn: Gregory A. Taylor, Esq.

11.10   <u>Governing Law</u>. Subject to the provisions of any contract, certificates of formation or articles of incorporation, instruments, releases, or other agreements or documents entered into in connection with the Plan, and subject further to section 10.1 of the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with (i) the Bankruptcy Code, the Bankruptcy Rules or other federal law to the extent applicable and (ii) if none of such law is applicable, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

11.11   <u>Filing of Additional Documents</u>. On or before substantial consummation of the Plan, the Reorganized Debtor and the Debtor shall, as applicable, file such agreements and other documents as may be necessary or appropriate to effectuate and evidence further the terms and conditions of the Plan.

11.12   <u>Reservation of Rights</u>. Except as expressly set forth herein, the Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order. The filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtor, the New Member, or any other Person with respect to Claims against and Interests in the Debtor.

BASIN TRANSLOAD, LLC

By:   _/s/ Eric Danner_____
Name: Eric Danner
Title:  Chief Restructuring Officer

DATED: June 1, 2020